# CHARLESTON.

| 7 | 278 |
| d46 | 707 |

## LUDINGTON *v.* RENICK.

### February 25, 1874.

A party seeking the rescission of a contract, on the ground of misrepresentations must establish the same by clear and irrefragable evidence; and if it appears that he has resorted to the proper means of verification, so as to show that he in fact relied upon his own inquiries, or if the means of investigation and verification were at hand, and his attention drawn to them, relief will be denied.

1874.
January Term.

This was an appeal taken from a decree of the circuit court of Greenbrier county, rendered on the 19th day of April, 1871, in three several suits in chancery, then pending in said court, which were consolidated and brought on to be heard together.

In the *first*, Samuel C. Ludington was complainant, and Benjamin F. Renick and Benjamin F. Harlow, respondents.

In the *second* the said Ludington was complainant, and Calvin B. Renick, Joseph H. Correll, administrator of William Renick, deceased, Hiram Scott, administrator of Thomas B. Renick, deceased, Mary E. Renick, Esther Renick and Thomas Q. Renick, respondents.

In the *third*, John W. Dunn was complainant, and said Scott as administrator of said T. B. Renick, said B

35

F. Renick, C. B. Renick, Samuel C. Ludington, Mary E. Renick and Thomas Q. Renick, and also Margaret E. Renick, respondents.

The appeal was taken by said Ludington.

The record of the case is very voluminous; but as the decision here turned upon the sufficiency of the evidence in the suit to sustain a decree rescinding the contract in the bill and proceedings mentioned—and as all the material testimony bearing upon this point is set forth in the opinion of the Court—it is not deemed advisable to state, further, the facts in the case.

The Hon. Joseph M. McWhorter, judge of said circuit court, presided at the hearing and decision below.

*Samuel Price, Adam C. Snyder* and *Mathews & Mothews* for the appellant.

*Caperton & Patton* and *Robert F. Dennis* for the appellees.

PAULL, JUDGE:

In February, 1868, the plaintiff filed his bill in the circuit court of Greenbrier county, praying for the rescission of a contract made between himself and the defendant Benjamin F. Renick. The bill recites that in two suits in equity pending in said circuit court, the one prosecuted by the plaintiff and the other by John W. Dunn, (the two suits having been consolidated,) a decree was rendered at the ——— term, 1867, directing certain lands, formerly the estate of Thomas B. Renick, deceased, to be sold for the payment of certain debts due to the plaintiff, to said Dunn, and other creditors of the said T. B. Renick; that after this decree had been pronounced, the said B. F. Renick stated to the plaintiff that his debts against the estate of his son, the said T. B. Renick, as recognized by the decree aforesaid amounted to $20,107, or about that sum; that the said Renick further assured the plaintiff that he (Renick) had become the owner of the debt due to the said John W. Dunn; that it amounted to $4,200, and was a preferred

debt, and that it would be so in the plaintiff's hands, and that he assured the plaintiff that he owned two-thirds of the debts against the estate of said T. B. Renick; that the plaintiff replied that he was willing to give for the land of said T. B. Renick, so decreed to be sold, $23,500 in the payments therein expressed; that a calculation was made upon this basis as to what the said B. F. Renick would be entitled to from the decree aforesaid which amounted to the sum of $8,900, which the plaintiff agreed to pay to the said Renick for his interest in said decree; this amount was to be paid at the times and in the amounts in said bill set forth, and that a contract was executed between the parties to this effect, and transferring the debts of B. F. Renick against the estate of T. B. Renick to the plaintiff.

The bill then avers that said adjustment was made upon fraud or mistake; and that the statements made by said Renick were in many respects erroneous:

*First.* That the debt decreed to said John W. Dunn was not a preferred debt, but a debt to be paid in common with the other debts, at large, of the estate.

*Second.* The said Renick's debts against said estate did not amount to the said sum of $20,107, or near that sum, perhaps not to as much as $17,000.

*Third.* The debts due to said Renick were not two-thirds of the whole indebtedness of the estate, or near so much, the whole indebtedness being about $55,000; and that the foregoing contract was iniquitous and unjust. The bill then prays that the bonds given in pursuance of said contract be set aside and canceled, and for general relief.

The defendant B. F. Renick files his answer, setting forth the contract in full, which recites that the plaintiff had bought of said B. F. Renick his entire interest and claims against the estate of T. B. Renick, deceased, both real and personal, for which the plaintiff bound himself to pay to J. W. Dunn the entire amount of his claim against T. B. Renick and B. F. Renick, security, the

said claim amounting to upwards of $2,200, more or less; and said contract further recites that he had executed his bonds to the said Renick for $6,500, in the aggregate, to be paid in the sums and at the times therein stated. The answer denies fully and explicitly that the defendant made the representations set forth in the bill, which are charged as false; denying in detail, and specifically, all the allegations of the bill in that particular, and all imposition and fraud.

In the absence of a demurrer to the bill, and of any controversy before this Court in regard to its sufficiency we shall assume that the bill discloses sufficient equity upon its face to justify the jurisdiction of the court.

Under the clear and explicit denial on the part of the defendant, B. F. Renick, of all the allegations of the bill on which the imputation of fraud or mistake is founded, it becomes imperative on the plaintiff to establish, by satisfactory and irreffragable proofs, the charges which he has made of misrepresentation and fraud, leading to the procurement of a contract so iniquitous and unconscionable as to authorize him to invoke the exercise of the high powers of a court of equity to secure its recission. Whether the evidence be of mistake or fraud, it should be of such clear and conclusive character, as to leave no reasonable doubt that the allegations relied upon are true.

Conceding that the misrepresentations set forth in the bill are of things material, constituting an inducement or motive to the acts of the plaintiff in this matter, are they established by such proofs as will, under the circumstances and surroundings of the parties at the time when this contract was made, justify its recission? This appears to be the chief, perhaps the only, question presented for our determination, and to this question our attention will be now directed.

In the year 1862, Thomas B. Renick died seized of a large tract of land in the county of Greenbrier, contain-

ing about eighteen hundred acres. This land had been conveyed to said Renick by a deed in which a lien had been reserved for the purchase money. The bonds given for this purchase money had been transferred to Ludington, the plaintiff in this suit, and he commenced and prosecuted proceedings in the circuit court of said county for the enforcement of the lien. About the same time another bill was filed by John W. Dunn, a creditor of the said T. B. Renick for a settlement of his estate and the payment of decedent's debts. In these two suits, which were consolidated by the court, an account was taken by commissioners, of the nature and amount of decedent's debts and liabilities; and on the fourteenth day of June, 1867, a decree was entered for the sale of the aforesaid tract of land, and directing how a distribution should be made of the proceeds of sale for the payment of debts, and specifying the claims of the plaintiff as entitled to be first paid; the amount of his claim, or lien, amounted, at this time, to about ten thousand dollars. The record further discloses that at this time the plaintiff was in possession of this tract of land, and had been for four or five years, under a purchase or title, which had not or could not be perfected. It further appears that defendant Renick was a creditor to a large amount of the estate of his son, T. B. Renick, and that his debts or claims, with others, had been proved before the commissioner and reported to the court in the suits aforesaid. The contract in plaintiff's bill mentioned, originated in the attitude of the parties thereto, towards this tract of land aforesaid, and the relation of these parties to each other at the time this contract was made now appear. Both were creditors of said T. B. Renick, to a large amount and both seeking payment out of this land; the plaintiff's debt was prior to all others; in addition to this, the plaintiff was in possession of this land which he had at one time bought, but for which he could obtain no title. Under these circumstances both parties were interested in the sale decreed, as the source whence

1874.
January Term.

Ludington
v.
Renick.

payment was to be had for their respective claims; while the plaintiff, being in possession, naturally desired, in addition, to perfect his title by a purchase of the land. Under these circumstances and relations of the parties, the contract was made, the plaintiff becoming thereby a creditor to so large an amount, as would enable him to control the sale, when the same should be made. To this effect, also, is the testimony of B. F. Harlow. The character of a contract for fairness. or honesty must be judged of at the time it is made, and in the light of the circumstances then surrounding the parties. Each, in this instance, doubtless, regarded it as his interest to be in a position to control the sale; hence the negotiation which finally resulted in making the contract, whereby the plaintiff became the owner of the defendant's claims against the land, and resulting in his. purchase of the land, when sale was made. Of this contract the plaintiff now complains, as having been entered into on his part through false representations in the three particulars named in his bill.

Upon turning to the testimony, we find the amount bearing upon this point to be very limited. If we are not mistaken in our examination, we find but one witness, William F. Williams, who testifies to any declarations of the defendant that were made directly to the plaintiff himself. Quite a number of other witnesses speak of the declarations of defendant in conversations had with them in regard to some one or more of the the particulars of which the plaintiff complains, but it does not appear that these declarations were made to the plaintiff himself, or in his presence or hearing, and, consequently, the testimony of these witnesses is inadmissible. Mr. William F. Williams' deposition is twice taken by the plaintiff; in the first, he states that he was present at a conversation had between these parties, at his house, when the contract was made, and heard the defendant say that more than two-thirds of the debts due from the estate of T. B. Renick, deceased, were due to

himself, and that at that time the plaintiff purchased the said claims of the defendant. In his cross-examination, he says he had no recollection of any explanation made by the defendant, before or at the time of writing the bonds or articles of agreement between them; did not know the amount to be paid by Renick, or the purport of the obligation between the parties. In his second deposition, he says he was present when the trade was made and heard defendant speak of a debt due John W. Dunn, which he said was a preferred debt, and which, according to his recollection, defendant said amounted to $4,200. In his cross examination, he says that he does not recollect whether he understood the bargain to be about closed when the parties arrived at his house. This witness states himself that he heard but a part of the conversation, and understood nothing of the nature and extent of the contract between the parties, nor how the statements of which he speaks came to be made, nor their bearing upon the acts of the parties. Excluding from consideration the testimony of the plaintiff and defendant, one of whom affirms and the other expressly denies the averments of the bill, thus being in irreconcilable conflict, the case of the plaintiff seems to rest upon the testimony of Williams. There is quite a mass of testimony in the record, but it relates to other aspects of the case, not material to consider.

We now turn to other evidence bearing upon this subject in the record. The bill alleges that the defendant stated that his debts against the estate of T. B. Renick *as recognized by the decree* in the cases therein referred to, amounted to $20,107, or about that sum, and that a statement of figures was then produced, said to have been taken from commissioner Caldwell's report, the foundation of the decree, showing the said Renick's debts to amount to that sum. The plaintiff himself thus shows by his bill that this declaration of defendant as to the amount of his debts against the estate of T. B. Ren-

ick, was founded upon the proceedings in the case, and upon the decree in the case, or cases · of himself and Dunn, set forth in the bill.

· It is most manifest that the proceedings in these cases then, or now, consolidated, and in which a decree had been entered, would furnish him with all needed information upon all the matters of which he now complains, and to this source of information, his bill recites he was expressly referred by the plaintiff himself.

To this source the plaintiff did go. Joseph F. Caldwell, the commissioner, testifies that before his report was made, the plaintiff had several conversations with him, and had the opportunity of seeing his report, and that he told him B. F. Renick's claims would amount to the neighborhood of $18,000. From the account of the commissioner, as then taken and stated, the plaintiff would also gain information as to the entire amount of indebtedness of the estate of T. B. Renick; here also he would learn the true state of the facts as to the alleged preferred debt of John W. Dunn, as well as the amount of the claims of defendant B. F. Renick. If there was error in the statements of B. F. Renick, in any respect, here the error could be corrected. With these means of full information in his hands; the account, proceedings, and decree made in his own case, and having had full opportunity to examine the same; and then, two months after that decree was rendered, deliberately making the contract complained of, we think he must be required to abide the result, as against the fragmentary statements and imperfect recollections of a single witness, adduced to prove the declarations of the defendant, alleged to have been made in any manner contrary thereto. That decree was entered on 14th day of June, 1867, and the contract was made the 7th day of August, 1867.

We now notice two or three matters connected with these proceedings, of which the plaintiff was informed. He would learn from the report, that the whole indebtedness of T. B. Renick's estate was something over $38,-

000, and not $55,000, as set forth in the bill. He would learn that the claim due to John W. Dunn although recited in the account of the commissioner as a preferred debt, was, by the *decree*, directed to be paid, *ratably*, with all other debts, after paying off the liens. And thus any erroneous impressions on his mind as to these matters were here corrected. With this full knowledge, or means of knowledge of these things, and with their conformity or otherwise with the alleged declarations of the plaintiff, he entered into the contract, understanding its entire consequence and effect.

But it is said on behalf of plaintiff that he was misled or deceived by the defendant in his representing his claims against the estate of T. B. Renick at $18,000 or $20,000, while in fact he had assumed and made his own a debt due by T. B. Renick and himself, as surety to one Thomas Creigh, the amount of this debt being at the time about $10,000, and that consequently this was not a claim against the estate of T. B. Renick. We have looked into the evidence upon that point, and are satisfied that whatever domestic reasons or obligations may have existed, there was no legal obligation on the part of B. F. Renick to discharge this debt, otherwise than as surety, and when discharged it would become a valid claim against the estate of T. B. Renick. We do not perceive, therefore, that there was any material error in this respect. In the contract itself the John W. Dunn debt is stated as amounting to $2,200 more or less, and not to $4,200, as the bill charges the defendant with having declared to the plaintiff, so that he is not misled in that particular. With this review of the facts and evidence, let us look for a moment at the law applicable to the case.

It is certainly necessary in all cases of misrepresentation that a party asking the recission of a contract should make it clearly appear that he was misled by them to his injury; if he knew that the statements were false at the time, he is not entitled to relief; and this would be

36

equally true if the mistatements were not relied on, or not reasonably relied on by the complaining party." Such (Adam's Equity, 399), for example, will be the case, if the party to whom the representation is made, resorts to the proper means of verification so as to show that he, in fact, relied on his own inquiries; or if the means of investigation and verification are at hand, and his attention is drawn to them; or if the representation regards a mere matter of opinion or inference, with respect to which, both parties have equal means of forming a judgment."

In *Slaughter's Administrator v. Gerson*, 13 Wallace (Sup. Ct. U. S.) 379, it was *held*, "that where the means of knowledge are at hand, and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of the means and opportunities, he will not be heard to say in impeachment of the contract of sale that he was deceived by the vendor's misrepresentations." Justice Field said: "A court of equity will not undertake any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. When the meanss of knowledge are at hand, and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of the means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before him, when no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by his confidence in the statements of another.

And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained.

See also the case of *Atwood v. Small* therein cited; and the same doctrine is held in other cases where the means of information are at hand and equally open to both parties.

The plaintiff's application for relief, tested in the light of these principles, seems to be precluded.

His bill alleges that he was willing to give for this land $23,500; he bought it at the sale for $18,300. Had the land been sold to a stranger for the former amount, there would have been added to the distributable fund the sum of $5,200, which would have greatly increased the percentage received by the plaintiff on the debts which he purchased of the defendant Renick; but the amount of this $5,200 he now has in his own estimated value of the land; at all events the reduced percentage received from the reduced price at which the land was bought cannot be imputed to the contract; nor can subsequent events in any way affect it, if valid when made.

The decree rendered in this cause by the circuit court of Greenbrier county on the 19th day of April, 1871, is reversed with costs to the appellee, B. F. Renick, he being the party substantially prevailing here, and this Court proceeding to render such decree as the court below should have rendered, doth adjudge and order that the bill of the plaintiff be dismissed, but without prejudice to any right defendant, B. F. Renick, may have, by any proper remedy, to enforce his said contract with the plaintiff, in whole or in part.

The other Judges concurred.

DECREE REVERSED AND BILL DISMISSED.