Fitzhugh v. Davis, Administratrix.

## FITZHUGH v. DAVIS, ADMINISTRATRIX.

46 337
71 98
· 46 337|
74 238|

1. **VENDOR AND VENDEE:** *Fraudulent representations of title.*

An honest expression of opinion by a vendor of his title, though erroneous, is not fraud, and affords no ground for rescission of the sale.

2. **SAME:** *Same.*

A misrepresentation in order to affect the validity of a contract must relate to some matter of inducement to the making of the contract, in which, from the relative position of the parties and the means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other on the subject of the contract. For if the means of information are alike accessible to both, so that with ordinary prudence or diligence the parties might rely upon their own judgment, they must be presumed to have done so; and if they have not so informed themselves they must abide by the consequences of their own inattention and carelessness.

3. **SAME:** *Rescission of contract for fraud or mistake.*

Where a party desires to rescind a contract for fraud or mistake, he must upon discovery of the facts, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own he will be held to have waived the objection, and will be conclusively bound by the contract as if the fraud or mistake had not occurred.

4. **SAME:** *Rescission for mutual mistake.*

The cases in which rescission of executed contracts with warranty has been granted for mutual mistake of both parties as to the vendor's title, show that it was, in the absence of some element of fraud, upon the ground of a total failure of consideration in the want of title to the whole, or a substantial part of the subject matter of the contract, and so rendering compensation in damages impracticable and inequitable.

5. **SAME:** *Same.*

To entitle a vendee of land who has gone into possession under a deed with general covenants of warranty, to rescind on the ground of *failure of title*, the loss must be such that he is thereby deprived substantially of the benefits of his purchase. If the beneficial enjoyment of his contract be not materially taken away and there is only a partial failure of consideration which can be compensated in damages there is no ground for rescission.

22–46

APPEAL from *Phillips* Circuit Court in Chancery.
Hon. M. T. SANDERS, Circuit Judge.

*Thweatt & Powell* and *Tappan & Horner*, for appellant.

In this case the appellee sold the entire place to appellant, representing that he had a good title, and appellant bought relying upon said representations; it turns out that the title to nearly one-third of the place proves defective, and according to reliable witnesses the place, as a plantation, has been most materially depreciated thereby; it is such a plain and palpable mistake, affecting the very substance of the subject matter of the contract, that a court of equity will rescind the contract. *5 Waite Actions and Defenses, page 510.*

When a bargain has been made, founded upon a mutual mistake of the facts constituting the essence of the contract, or founded upon representations of the seller, material to the bargain, it will be avoided, although made by innocent mistake. *5 Waite A. & D., page 513, sec. 2; Davis v. Mitchell, 1 Story (C. C.), 173; Harnion v. Allen, 2 Sumner (C. C.), 387.*

So if both parties to a contract for the sale of land are under a mistake with regard to the vendor's title, which was supposed to be perfect, but proves void, a court of equity will relieve the vendee from the contract. *5 Waite A. & D., 513*

A vendee may have a rescission of the contract on the ground of mistake, when it appears that his vendor supposed he had a title when he had none, nor will he be compelled to rely on his warranty or to pay the purchase money. *Bowlin v. Pollock, 7 Mon. (K.), 26.*

If a party makes representations with the intent that another rely upon them, and the other does rely on them

and these representations turn out to be false, it is as much a fraud as if the party knew them to be untrue. *3 Waite A. & D., 436; Bennett v. Judson, 21 N. Y. (7 Smith), 238; Carpenter v. American Ins. Co., 1 Story (C. C.), 57; 1 Story Eq., 201.*

If the misrepresentation was as to a material fact and the injury to the party who relied upon it was of such a character that he would have declined the purchase if he had known the true state of the case, equity will rescind the contract. *1 Story Eq., 212; Bacon v. Brown, 7 John. C. R., 204; Gill v. Carline, 4 J. J. Marshall, 392.*

Misrepresentation will affect the validity of the contract if it appears that the purchaser made the contract upon the faith and trust which he reposed in the representations of the other, on account of his superior information and knowledge in regard to the subject of the contract. *Yeates et al., v. Pryor, 11 Ark., 58; Kennedy v. Johnson, 2 Bibb., 12.*

In the case of *Yeates v. Pryor*, it was held that the vendor failing to perfect title to about one-third of the land he covenanted to convey, the vendee was entitled to a rescission of the contract. This court held in *Diggs v. Kirby, 40 Ark., 420*, that if there is a concealment of material facts, or misrepresentations affecting the title or valuation of the property amounting to fraud, the vendee may have relief, although he has accepted a deed. It is evident from the facts in this case, and the law applicable to them, that the appellant is entitled to the relief asked for, and that the circuit court erred in not making the injunction perpetual, and in not ordering a rescission of the contract.

*Stephenson & Trieber*, for appellee.

There are two question of law involved in this cause:

*First*—Is appellant entitled to a rescission of his purchase?

*Second*—If not, what abatements of purchase money is he entitled to?

1. This being an executed contract, appellant having accepted from appellee a deed, with full covenants of warrarnty, and under it taken possession of the plantation, it is only necessary for us to examine under what circumstances a rescission of a sale, fully executed, will be granted by a court of equity.

The leading case on this subject in this state, and one which has invariably been followed in all subsequent cases, as the correct exposition of the law of rescission, is *Yeates v. Pryor, 11 Ark., 58.*

It is there held: " Where a vendee has accepted title, he is presumed to have examined the evidences thereof, and held them sufficient, and in the absence of fraud, must rely upon his covenants of warranty."

As to what will constitute fraud, the court, in the same case, says: "It is not every misrepresentation of the vendor, in regard to the property sold, that will amount to fraud, be it ever so exceptional in point of morals. The misrepresentation, to affect the validity of the contract, must relate to some matter of inducement to the making of it, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other, on account of his superior information and knowledge in regard to the subject of the contract; for, if the means of information are alike accessible to both, so that, with ordinary prudence or vigilance, the parties might respectively rely upon their own judgment, they must be presumed to have done so, or if they have not so informed themselves, must abide

the consequences of their own inattention and careless-ness."

For an affirmance of these principles by this court see *Davis v. Tarwater, 15 Ark., 286 ; Peay v. Wright, 22 ib., 198; Grider v. Clopton, 27 ib., 251; Rightor v. Rollins, 31 ib., 172 ; Merritt v. Robinson, 35 ib., 483; 15 Wall, 377 ; 3 Rand ( Va.), 504; Rawl. Cov. Tit., 604; 1 Duna (Ky.), 305 ; 2 Green Chy., 489.*

A mere matter of opinion expressed by a vendor of land in good faith, in respect to the title to land sold by him, and the probable decision of the court thereon should it be contested, is not ground for the recission of the contract, because it turns out not to be correct; there being no confidential relation subsisting between the parties. *Maney v. Porter, 3 Humph. (Tenn.), 347.*

Having failed to inform himself of what he had the opportunity to ascertain, he must abide consequences of his own carelessness. *23 Ark., 277, 147 ; 24 ib., 456.*

There are two other strong grounds for refusing rescission :

*First*—The delay and failure to offer to rescind for so long a time after the discovery of the pretended fraud practiced by appellee upon appellant:

*Second*—His inability to place appellee *in statu quo.*

Where a party desires to rescind upon the ground of fraud or mistake, he must, upon the discovery of the fraud, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own, he will be held to waive the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. *He is not permitted to play fast and loose.* Delay and vacillation are fatal to the right which had before existed." *Grymes v. Sanders, 93 U. S., 62; 2 Woods, 244;*

*40 Cal., 535; 3 Johns. Chy., 42; 15 Ark., 286; 17 ib., 228; 35 ib., 483; ib., 334.*

He who seeks rescission must be in condition to, and shall put his adversary in *statu quo.* *17 Ark., 228; 2 Ala., 189; 51 N. H., 426; 52 Ill., 397; 3 A. K. Marsh, 180.*

2. As to what amount appellant is entitled to as an abatement from the purchase money still due, the court below followed what has been the law of this state since the rendition of the opinion of this court in *Logan v. Moulter, 1 Ark., 313; see, also, 43 Ark., 439; 3 Caines, 111.*

HON. J. W. MARTIN, Sp. J. The appellant, Fitzhugh, purchased of J. Cole Davis, appellee, on the 8th day of January, 1877, a plantation in Phillips county, of 960 acres, known as the "Back Rabb" place, described as follows: West half of southwest quarter of section 14; south half 15; southeast quarter 16; north half 22, and west half northwest 23, township 3 south, 4 east. The contract price was $12,000; cash $4,000, and two notes of $4,000 each, payable on the 1st days of April, 1878, and 1879, with 10 per cent. interest, from date till paid. These notes were secured by a deed of trust executed by appellant to appellee upon the entire plantation. Appellee executed to appellant a deed with general covenants of warranty, and he entered immediately into possession of the place, and has since held and cultivated it, except as hereinafter stated. As the loss of a part of this place is the foundation of this case, we give the steps leading up to this in detail here.

On February 23, 1878, a little over a year from the time of purchase by appellant, Mrs. Whittaker, one of the heirs at law of John Rabb, former owner of the plantation, filed her bill to recover a part of the land; appellant and appellee both being parties defendant thereto. In Decem-

ber, 1879, the Phillips circuit court in chancery sustained the claim of Mrs. Whittaker, and entered a decree in her favor for an undivided seven thirty-sixths of the entire tract. This decree was affirmed by this court at May term, 1882 (in case of *Davis v. Whittaker, 38 Ark., 453.*) At the following term of Phillips circuit court, the mandate of this court was placed on file, and on November 23, 1882, a final decree entered there and commissioners appointed to make partition of the land, which was done on report filed, and made final in December, 1883. In this partition, to which appellant was a party, 260 acres were given to Mrs. Whittaker; the balance of 700 acres, including all but 65 of the cleared land, was allotted to appellant.

On the 20th day of March, 1884, all that part of the place allotted to appellant, having been by appellee, advertised for sale, to pay the last note with accrued interest, the present suit was instituted, the object being to enjoin the sale, and for a rescission of the entire contract, and to have refunded to appellant the $8,800 which he had paid on the purchase.

The bill charged fraud and imposition on the part of appellee in the original sale, in that he had fraudulently induced appellant to believe that he had good and perfect title to the whole place, whereas, in fact, the title had utterly failed, and he had been evicted from 260 acres of the land. That the part so lost was a material inducement to the purchase by appellant, without which he would not have entered into the contract at all; and that the portion cut off was so connected with, and essential to the use and enjoyment of the other 700 acres, that he had substantially lost the benefit of his purchase, and that compensation for the loss of this 260 acres could not be made in money, or by abatement from the purchase price. In the language of

the bill, " That said 260 acres of land are so laid off that
the value of the balance of the tract, and the whole tract,
is greatly depreciated and lessened; by taking the wood-
land convenient and necessary for gin wood and timber for
said place, it is rendered undesirable and next to valueless
to plaintiff or any one else." A temporary restraining
order was issued.

The appellee answered denying any fraud or misrepre-
sentation in his dealings with the appellant, but alleging
that he had conducted himself with the utmost good faith,
and that all his statements in regard to his title were in
perfect accord with his honest opinion and conscientious
conviction in regard to it. That appellant had gone into
possession and had for a long time held possession under
his warranty deed, and had used and cultivated the place;
that he could not be placed *in statu quo*, and that rescission
would be inequitable and unjust. Admitted that the title
to 260 acres had failed, and that appellant had, on Novem-
ber 23, 1882, been evicted therefrom, and proposed to
abate for the amount of purchase money remaining un-
paid sufficient to cover the loss, charging that the part
cut off was not material to the place sold, and its loss
could be readily compensated in money. And, further,
that appellant's long acquiesence had waived any right he
might have once had to a rescission, if such ever existed.
The answer also contained a cross-bill asking foreclosure
for balance of purchase money after abatement for the
loss.

The finding and decree of the court below were in ac-
cordance with the allegations and prayer of the answer.
Rescission was refused. An abatement was made for the
loss of 7-36 of the place by a credit of 7-36 of the original
purchase price of $12,000, as of November 23, 1882, date
of eviction, entered on balance of purchase money, and a

foreclosure was decreed for the amount of the balance so found due.

Since the appeal, J. Cole Davis has died and the case has been revived in the name of his administratrix, but for convenience we have referred throughout to J. Cole Davis as "appellee."

A large mass of depositions was submitted on the trial below; and while there is some little conflict in statements made, especially in dates and matters of opinion and calculation, yet in the main they agree as to the material matters of fact.

The sale was made January 8, 1877, the matter having been under discussion for several weeks between appellant and appellee. Appellant, who lived in the immediate vicinity of several of the Rabb family and had heard that they asserted claim to the place, seems from the outset to have had some apprehension of trouble from that source. He inquired of appellee if the Rabb heirs, and especially Mrs. Whittaker, did not have a valid claim, and appellee told him that there was no prospect, as he believed, of any such claim ever being pressed, and if it was he did not think it could ever succeed. And he further assured appellant that he would be liable on his covenants to make good such a loss and that his financial condition was such as to afford ample security for this.

Appellant, accordingly, closed the trade, paid the cash, $4,000, executed the two notes of $4,000 each, and deed of trust to secure them, and went into possession of the whole place in January, 1877, there being then open and in cultivation about 373 acres, twelve acres of this being on the tract that was, afterwards, set apart to Mrs. Whittaker. The first $4,000 note was paid about the time it fell due, and on the 8th of July, 1879, $800 were paid on the last

note. After this appellant refused to make further payments.

The rescission is urged here on the ground of actual fraud in appellee in procuring the sale on the ground: *First*—That appellant had been induced by appellee's statements as to his title to go into the trade, believing that he was getting a perfect title, when his title to a large part of the tract had utterly failed. *Second*—That independent of any question of imposition, the loss of 260 acres was such a failure as to amount substantially to the loss of the benefits of the trade and to entitle him to rescission.

1. Fraudulent representation.

The statements made by appellee in regard to his title were, in the absence of artifice or concealment, mere expressions of opinion in regard to his title and could not be classed as fraudulent misrepresentations. The validity of the claim of Mrs. Whittaker depended upon the construction of a complicated will, about which learned counsel differed, and the vigor with which appellee, under advice of able attorneys, litigated the case through a long and expensive lawsuit, showed the sincerity of his belief in the construction he then put on this will. An honest expression of opinion in such case, though erroneous, is not fraud. *5 Waite Ac. & Def.*, *515*; *Smith v. Richards*, *13 Pet.*, *26*; *Maney v. Porter*, *3 Humph. (Tenn.)*, *347*; *Speiglemyer v. Crawford*, *6 Paige Chy.*, *254*.

2. SAME.

And on another ground appellant is precluded from setting up this erroneous opinion as a basis of rescission in itself. He had been living for several years in the immediate neighborhood of this Rabb place, and intimately acquainted with the Rabb family and the history of this title. The will of John Rabb was on record and all the means of investigating the title were as open to him as to appellee. He was a man of large property and evidently of no mean intelligence, and there was nothing in the personal relations

of vendor and vendee of a confidential character to exempt appellant from investigating for himself. Nor is there anything to show that appellee, by any artifice, endeavored to forestall or prevent a full examination by him. The rule in such cases in this state is thus stated in *Hill v. Bush, 19 Ark., 522:* "That a misrepresentation, in order to effect the validity of a contract, must relate to some matter of inducement to the making of the contract in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other on the subject of the contract. For, if the means of information are alike accessible to both, so that with ordinary prudence or diligence the parties might respectively rely upon their own judgment, they must be presumed to have done so. Or if they have not so informed themselves, must abide by the consequences of their own inattention and carelessness," citing *Yeates v. Pryor, 11 Ark., 66,* and numerous authorities.

And even if there had been any element of fraud in the conduct of appellee in the negotiations preceding the sale, it could have been, at most, only in reference to this Whittaker claim, and as to that, independent of the considerations already mentioned, appellant was, early in 1878, made defendant to her bill to enforce this claim. And yet we do not find him proposing a rescission until about the time of the bringing of this suit, in March, 1884. During all these years he had been in tho full enjoyment of the whole plantation, and not offering to rescind till he is pressed for final payment. The place has become greatly depreciated in value by reason of the breaking of the levees, overflow and washing away of fences and bridges, and is actually at the time most of it under water.

3. Rescission for fraud or mistake.

" Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted." *Grymes v. Sanders, 93 U. S., sup. C., 62.* On same subject see *5 Waite Act. and Def., 511.*

It must be clear that there has been such a misstatement of the facts as to mislead the injured party and to induce him to enter into the transaction. And he must be prompt to avail himself of the objection as soon as it is discovered. He must not wait to experiment and see whether the transaction may not after all turn out well. Acquiescence for a little time in such cases is condonation. *Morgan v. N. O. R. R. Co., 2 Woods, 244; 7 W. Va., 273; 51 How. (N. Y.), 69.*

In view of these principles, rescission cannot be sustained under the circumstances here presented, on the first ground of misrepresentation as to appellee's title.

4. Rescission for mutual mistake.
Can it be demanded on the other ground, which revolves itself really into the question of a mutual mistake as to the title to the 260 acres set apart to Mrs Whittaker? Was this such a failure as, in the absence of fraud or imposition, to entitle appellee to rescind?

We are cited by learned counsel for the appellant to a number of authorities to sustain this position: That where there is a mutual and honest mistake, even of both parties as to vendor's title, equity will decree a rescission. A brief reference to these authorities will show that where a rescission was granted in executed contracts with warranty, it has been, in the absence of some element of fraud, upon

the ground that there was a total failure of consideration, in the want of title to the whole, or a substantial part of the subject matter of the contract, and so rendering compensation in damages impracticable and inequitable. Let us examine some of these citations. *5 Waite Act. and Def., 513*, as follows:

"Nothing is clearer than the doctrine that a bargain founded in a mutual mistake of the *facts* constituting the *essence* of the contract, or founded upon representations of the seller material to the bargain and constituting the essence thereof will avoid it, although made by innocent mistake," citing *Daniel v. Mitchell, 1 Story C. C., 173; Glassell v. Thomas, 3 Leigh (Va.), 113; Hammond v. Allen, 2 Sumner C. C., 387.*

"So if both parties to a contract for the sale of land are under a mistake as to the vendor's title, which was supposed to be perfect but proves *void*, a court of equity will relieve the vendee from the contract," citing here *Hadlock v. Williams, 10 Vermont, 570.*

The first case cited of *Daniel v. Mitchell,* was a case of purchase of a tract of land for its timber solely; represented by vendor to have 6,000,000 feet of pine timber, whereas it only had one-twelfth of that amount. Judge Story says: " Here, then, we have a tract represented by the vendors in their contract as containing 6,000,000 of timber, and that supposed fact constituting the very basis of the bargain; when in fact it does not contain more than one twelfth of that quantity. * * * We do not meddle with cases where the error in quantity is of a slight nature not going to the essence of the bargain. The purchaser here contracted to give $50,000 for a tract of land represented to contain 6,000,000 feet of pine timber. It cannot be possible that they ought in law or justice, or common sense, be bound to pay that amount for 500,000 feet only."

And it may be further said of that case, while Judge Story puts the decision on the ground of mistake, independent of intention, yet it is evident that he was strongly impressed by the suspicious circumstances of the case and especially the examination of the land. He says: "An exploration was accordingly made by an agent of the purchasers, accompanied by an agent of the vendors. How it was conducted the evidence sufficiently discloses. A more complete example of credulity and delusion on one side and of mistake and misrepresentation (whether innocent or designed is not material to be examined) on the other side perhaps cannot be found in the annals of our country."

The next case cited of *Glossell v. Thomas*, was where both vendor and vendee were mistaken altogether as to the identity of the tract conveyed. The vendor did not convey, nor the vendee receive the tract of land or any part of it which was designed by both. Of course a case for rescission.

In *Hammond v. Allen*, decided also by Judge Story, was a case of executory contract for services to be performed in prosecuting a claim against the government of Portugal. The parties contemplating expensive and tedious services to be performed had stipulated for a very large fee. It turned out that, at the time of entering into this contract, the claim had been actually allowed, and all that was necessary was for claimant to present himself and receive his money. Of this fact both Allen and Hammond were ignorant at the time. The court, after referring to the delicate relation of the parties as principal and agent, says in closing: "It is a case of mutual error upon a matter of fact constituting the very basis of the contract and the *whole consideration* for it.

*Haddock v. Williams* was in like manner a case of entire failure of consideration and on that ground rescinded. The vendor had no title whatever to the land conveyed.

We are referred also to *Bowlin v. Pollock, 7 Monroe (Ky.)*, *26*. This, like the last, is a case of entire failure of consideration. In summing up, the court says : " In short he has gotten nothing by the contract of the least benefit except a simple warranty against the heirs of Spillman. * * * If he had gotten a defective title by the contract we admit that the cases are not wanting to show that he ought to rely on his warranty."

A very casual glance at the facts of case now before the court will serve to show the vast difference between the facts of these cases relied on by appellant and the one we are considering. Here we have a perfect title passing to appellant to all the plantation, except a little less than one-fifth in value. And that is cut off by an impassable slough from the main tract, and for five years appellant states his only revenue from it was a rent paid of $81 per annum on the twelve acres cleared there when he bought. During all this time he was running a large cotton plantation on the part which he retains and was enjoying the use, cultivation and profits of the 363 acres.

*Kerr on Fraud and Mistake, p. 339*, says: " If the false representation by which a contract has been induced was not made fraudulently, but was made through mistake or misapprehension, and the subject matter of the contract, though differing in some respects and in certain incidents from what it was represented to be, is not so different in substance as to amount to a failure of consideration, the transaction will not be set aside, if the party who made the representations is willing to give compensation for the variance, and the variance is such as to admit of compensation by a pecuniary equivalent." And on page 406 the

same author says: "What is the nature or degree of mistake which is relievable in equity as distinguished from mistake which is due to negligence, and therefore not relievable, cannot well be defined so as to establish a general rule, and must in a great measure depend on the discretion of the court under all the circumstances of the case."

And further on same subject, page 408, Mr. Kerr says: "Mistake in matter of law or fact to be ground of equitable relief must be of a material nature, and must be the determining ground of the transaction. A man who seeks relief against a mistake must be able to satisfy the court that his conduct has been determined by the mistake. * * *

"Nor, indeed, does the circumstance that the mistake may be in a material matter always in itself entitle a man to the interposition of the court. The law does not go to the length of requiring that parties who deal with each other at arms length should be on the same level as to information and knowledge. If parties stand upon equal footing, and the means of information and knowledge are open to them both, either of them is entitled to the benefit of his own judgment, skill and ability. If the parties act otherwise fairly in the transaction, and it is not a case in which one of them is bound, upon the ground of confidence or otherwise, to make a disclosure to the other of matters affecting the subject. matter in respect of which they are dealing, the court will not interfere."

"A man cannot have relief on the ground of mistake, unless the party benefited by the mistake is disentitled in equity and conscience from retaining the advantage he has."

The case of *Thompson v. Jackson, 3 Rand. (Va.), 504*, is very similar in its facts to the one at bar. Jackson sold to Thompson a tract of land by a survey showing it to be about 278 acres. A deed was executed and land mort-

gaged to secure a balance of purchase money. It appeared afterward and before payment that by a mistake in survey the tract embraced something like one-fourth less than shown by the survey. The land was advertised for sale under the mortgage, and Thompson filed his bill to rescind. The court in discussing the principles on which *rescission* is granted in cases of executed contracts, says :

" The vendor has parted with his possession and has taken his money, bonds or other equivalent. The vendee has entered into possession clothed with the fee or other estate purchased, and for security of his title has taken a deed with such covenants and warranty as his contract called for. To undo all this is a strong-handed measure, and none but a clear and strong case will justify it. * * * * When the application is to rescind an executed contract for land, the English books lay it down as a general rule, admitting of but few exceptions, that to justify such a decree fraud must appear, and this fraud must be distinctly put in issue by the pleadings. If the charge be a mere failure of consideration arising from the sale of a defective title, unmingled with fraud or *mala fides* of any kind, it is generally laid down that the vendee will be left to the covenants and warranty in his deed."

" To this general rule there are some exceptions of cases which may be classed under the head of mistake; but the mistake must be plain and palpable, and must affect the very substance of the subject matter of the contract."

Arguing then as to the facts of the case, the court continues :

" How stands the case on the ground of mistake? The vendee has bought a tract of land for 278 acres. It seems that in making the survey the surveyor ran in on Wright's lines so as to take from him a slip of not more than 8 acres, I believe. But take the land lost at the largest esti-

23–46

mate, and say it was worth a fourth of the whole purchase money. Yet can it be said that it would furnish one of those cases of mistake that would authorize the rescission of the whole contract? Has not the purchaser got the substance of the thing bought? The surveyor says this land is of no peculiar value, that it is maiden wood land and there is sufficiency of timber for the place without it."

"If you say that for such a deficiency as this, not affecting the bulk of the land, you will rescind, where will you stop? * * * * I am clear, therefore, that the chancellor was right in refusing to rescind this contract."

5. Same: The rule is: To entitle a vendee of land, who has gone The rule. into possession under a deed with general covenants of warranty, to rescind on the ground of *failure of title*, the loss must be of such character as that he is thereby deprived substantially of the benefits of his purchase, but if the beneficial enjoyment of his contract be not materially taken away, and there is only a partial failure of consideration which can be compensated in damages, there is no case for rescission.

Applying the rules which the authorities, as well as common sense and justice indicate for our guidance to the case at bar, there are many considerations connected with this transaction tending to the conclusion that a court of equity should not grant the rescission asked for.

The appellant purchased and went into possession of this plantation in January, 1877, taking his deed with covenants of warranty. And evidently at that time, as his conduct showed in inquiring into appellee's financial condition, contemplating this very contingency of the loss through Mrs. Whittaker's claim, and that he would have to rely on these covenants, and the ability of appellee to perform them, for his protection.

When he took possession there was on the whole track 373 acres in cultivation of rich Mississippi bottom land, used exclusively for raising cotton.  Of this, 361 acres (Fitzhugh puts it at 363) were on the part to which there is a good title, and only twelve acres of cleared land on that, afterwards, allotted to Mrs. Whittaker, 53 acres having since the sale been put in cultivation by tenants under a five year lease made by appellee before the sale.  This tract called "Buck Island" is cut off and isolated from the balance of the place in a manner that cannot well be appreciated, without a plat, which accompanies the transcript as part of the depositions.  The whole tract of 960 acres lay in a solid rectangular body, except 160 acres (the southeast quarter of 16) abutting upon the extreme northwest portion of the tract.  This 160 acres, together with 100 acres cut off from the northwest corner of the rectangular body of land in the main tract, by a slough called West Bayou, running diagonally across from northeast to southwest, constitutes the portion, 260 acres, set apart to Mrs. Whittaker.  West Bayou is a natural barrier by which this tract is divided from the main plantation; it is impassable except by ferry or bridge, and there is neither across it.  Appellant built a bridge over it, but it was afterwards washed away in 1882, and he never rebuilt it.  He says of it in his deposition :

"By the partition Mrs. Whittaker got all of the land known as 'Buck Island,' or all of the land lying west of West Bayou," and 'Buck Island' never realized me but one year's rent from the time I bought it until Mrs. Whittaker got it,  *  *  *  except for twelve acres I collected $81 every year."  This detached body of land, which the commissioners found to be of the value of 7-36ths of the whole 960-acre tract, and hence set apart to Mrs. Whittaker, seems to have been of little practical use to the bal-

ance of the land, and its only value to appellant, practically, was the rent derived from it, and he complains that he had realized very little from it even in that way. Its relation to the balance of the place really seems to present an unusually clear case for compensation in damages. Even its exact relative value, with reference to the whole place, had been the subject of judicial ascertainment in the former suit to which both appellant and appellee were parties. And independent of this the deposition established beyond controversy that if there was any error in value, it was in favor of appellant in the partition made.

There is an effort made to show that there was an utter insufficiency of timber on the 700 acres set apart to appellant for the purposes of supplying the place with fire wood, fence and gin wood, and that the Buck Island place was essential for this reason to its beneficial enjoyment. But this claim is not sustained by the facts. To begin with, it does not appear that for seven years, from 1877 to 1884, that appellant had even depended on or used this tract for such purpose. Certainly for two years prior to his application for rescission in 1884, there had been no bridge across West Bayou, and he had been practically cut off from it.

His gin and principal improvements were on the extreme eastern side of his place, more than a mile from the nearest timber on this Buck Island place, while there was on his 700 acres, besides the 361 acres in cultivation, timbered land variously estimated at from 100 to 250 acres, much of it large forest timber, suitable for any farm purpose that might be required, and a quantity of it young growth since the war, but which is shown by depositions on both sides to be of rapid growth and already fit to supply the place with fire wood for engine and other purposes. And this timber lies near to the gin and other im-

provements, where it can be readily and conveniently procured without going across the entire plantation, as was necessary to reach the Buck Island place, even when they could get across the bayou.

There are some statements made in response to leading interrogatories, giving as the opinion of the witnesses, that the place was materially injured by the loss of this tract. But they all resolve themselves into one proposition, that the best timber was on the Buck Island place.

Indeed, considering that this 260-acre tract was so isolated at the extreme end of the place, remote from the cotton gin, press and other improvements; shut off as it was by an impassable barrier, and overflowed as it all was, and depreciated then in value, it would seem to have been a good bargain for the appellant to get rid of it, on the terms allowed by the chancellor, in a *pro rata* abatement from the original purchase price.

Moreover, the proceedings in the Whittaker suit greatly simplified the duties of the court in this case. It definitely set apart to Mrs. Whittaker a specific proportion, 7-36ths of the entire place, and hence furnished an exact basis for the *pro rata* abatement from the purchase money.

In view of all the facts in this case, that the posession and enjoyment of the place was held so long by appellant; that he never sought for a rescission till the place had, by reason of broken levees, deep overflows and destruction of improvements, greatly depreciated in value; that the main plantation, as used and enjoyed by him, is still in his undisputed possession; that the part so lost was separate and isolated, and its loss could have but little effect upon the full beneficial enjoyment of the plantation; that such loss was not only susceptible of, but had been, the subject of judicial ascertainment; and that appellant gets substan-

tially all he bargained for, and a liberal abatement for what he lost, it is clearly not a case for rescission.

Let the decree of the court below be affirmed.

Hon. W. W. SMITH did not sit in this case.