NEILL v. CORNISH.

Opinion delivered June 25, 1923.

1. VENDOR AND PURCHASER—RESCISSION FOR FAILURE OF TITLE.—To entitle a vendee in possession under deed with general covenants of warranty to rescind for failure of title, his loss must be of such a character as to deprive him substantially of the benefits of his purchase; and if the beneficial enjoyment of his contract be not materially taken away, and the failure of consideration be only partial, and such as can be compensated in damages, there is no case for rescission.

2. MINES AND MINERALS—FAILURE OF TITLE OF OIL LEASE—RESCISSION.—The purchaser of an oil lease is not entitled to receive or recover the purchase price and drilling expenses for partial failure of title because a portion of the land included in the lease had previously been deeded to another, where the evidence showed the absence of fraud, and that, because of the existence of a geological fault, none of the lands included in the lease was oil-bearing, and where the portion of the land to which the title failed was not more or less valuable than the other lands included in the lease, the purchaser was entitled to recover a proportionate share of the purchase money.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

*George P. Whittington* and *O. H. Sumpter,* for appellant.

Appellant was entitled to rescind this contract and recover the purchase price as well as the cost of the well, the consideration having failed. Appellees had no title to one and a quarter acres of the tract leased to appellant and upon which the well was drilled. It was included in the description. 95 Ark. 375. Fraud and breach of warranty alleged as grounds for recovery. 71 Ark. 91. Appellee was deprived of substantial benefits of his purchase and the beneficial enjoyment of his contract, and can not be compensated in damages. 46 Ark. 347; 123 S. W. 263. Should recover the value of improvement placed on land and interest. Black on Rescission and Cancellation, § 636, 632. The decree should be reversed, the contract allowed rescinded, and appellant given judgment for the money paid and cost of improvements.

*Marsh & Marlin,* for appellees.

The title to one and a quarter acres of the tract leased failed, the abstracters having overlooked the prior conveyance thereof to the Rock Island Railway, which conveyance was of record, as the other conveyances from which the abstract of title was made, and of which appellees had no more actual knowledge than did appellant, and about which no false or fraudulent representations were made. No ground exists for a rescission of the contract. 143 Ark. 581; 101 Ark. 608. Appellees are only liable for the value of the land the title to which failed, proportionately to purchase price of entire tract, which they stood ready to pay, and tendered in court. 59 Ark. 196; 13 Ark. 524; 143 Ark. 24. The testimony disclosed that the test developed there was no oil of commercial value on the entire tract. Case does not come within the rule announced in 95 Ark. 375; 46 Ark. 337 distinguished.

SMITH, J. Appellant, as trustee for himself and a number of others, bought an oil lease from appellees on a ten-acre tract of land near El Dorado, for the sum of $20,000. The land covered by the lease was a part of a seventy-acre farm owned by A. J. Cornish in his lifetime. Cornish died in 1919, and was survived by his widow, a woman seventy years old, and seven children, all of whom were adults at the time the lease was made.

In 1921, soon after the discovery of oil in Union County, appellee L. K. Cornish, a son of A. J. Cornish, acting for himself and the other heirs of his father, negotiated the lease to appellant. L. K. Cornish was a commercial traveler, and had not lived on the farm for twenty years. An abstract of the title to the land was procured from a reputable abstracter in El Dorado, which appellant caused to be examined by his attorney. In connection with the abstract Mrs. Sallie Cornish, the widow of A. J. Cornish, made an affidavit which recited that her husband had been in the possession of the land leased for many years.

The title was approved and the purchase money paid, and appellant entered into a contract with Chal Daniels & Company to drill a well. The lease contract required the lessee to begin drilling a well within sixty days, and the drilling commenced about April 18 or 20. On May 9 notice was served on appellant that the land on which the well was being drilled was owned by the Rock Island Railroad Company, and appellant was ordered to vacate. The drilling was suspended for a few days, during which time an effort was made to secure permission to complete the well. This was not obtained, and the drilling was resumed, and the well was completed in June.

The well was drilled in and bailed out after the service of the notice, this being the final work done about the drilling of a well.

It appears that in 1908 A. J. Cornish sold to the Rock Island Railroad Company an irregular strip of land containing about one and a quarter acres of land, which the railroad company required as a part of the land covered by its reservoir or water supply near El Dorado. The land sold the railroad company was a long narrow strip extending along the west front of the farm. The deed was placed of record soon after its execution.

Mrs. Cornish admitted she had signed a deed to the railroad company in which she relinquished her dower, but she is a woman of but little experience in business, and the land was described by metes and bounds, and she testified that she did not know that the land sold by her husband to the railroad company was included in the lease, in which the land leased was also described by metes and bounds. The abstract of the title was defective in that it failed to show the conveyance to the railroad company, and none of the parties to this litigation had actual knowledge of the fact that a portion of the land embraced in the lease had been previously con-

veyed to the railroad company, and there is no imputation of fraud on the part of the lessors.

At the time the drilling began on this lease no wells had been drilled north, south or east of this well, but there was a producing well, known as the Boggs well, about eighteen hundred feet west of the land. As the drilling on the lease progressed there was a showing of oil, and when the well was drilled in and bailed out there was oil in the well. The well is what is known as a pumper, that is, a well out of which it would be necessary to pump the oil, but no pump was ever placed in the well, and its capacity as a producer remains conjectural. Mr. Galloway, the manager of the company which drilled the well, testified that, in his opinion, the well would produce from twenty to fifty barrels per day, but he expressed the opinion that it would not be profitable to install a pump if the production ran less than thirty barrels a day, and that he did not know for what time it would produce even the minimum capacity.

J. A. Brake, the State Oil and Gas Inspector, testified that he was a geologist, and that he had many years' experience in the oil fields. He testified that what oil men and geologists know as a fault ran along the western boundary of this lease. This fault was about a quarter of a mile wide and three miles long, and the well on this lease was drilled in the western edge of the fault. He described a fault as being caused by the fold of the earth, which resulted from the manner in which the earth had cooled, and that this fault defined and limited the oil field on its western side. After appellant commenced drilling this well, other wells were begun north, south and east of this well, but all were dry holes, thus proving positively that the fault terminated this field. Brake further testified that the only part of this lease on which oil could have been found was along its western border, where the well was drilled. He testified that a survey of this field was made by geologists in the service of the Federal Government, in which he participated, in

March, 1921, and that the fault was located and platted the latter part of March or the first of April, 1921, but the report had not been given to the public when appellant bought his lease, and neither the lessors nor the lessee knew of this fault when the lease was given. Brake testified, however, that he notified the drillers shortly after they commenced drilling of the presence of this fault, and advised them against continuing the drilling.

Brake also testified that, but for the presence of this fault, any part of the lease would have been regarded as oil land, and that any one acre was as valuable as any other acre for that purpose, but that it was the custom always to drill nearest production, that is, nearest a well which was producing oil.

Galloway testified that, when he commenced drilling, the entire ten acres looked like producing territory, and there was no difference in the value of any part of the lease, but that the drilling was begun on the west side of the lease because this was the side nearest to the Boggs well.

There is no intimation of fraud in this case. On the contrary, there is a disclaimer of any intention to charge fraud to the lessors, and, in our opinion, all parties acted in entire good faith. But for the mistake of the abstracter the lease would no doubt have been drawn to exclude the strip of land sold the railroad company, and there was no collusion between him and the lessors. The abstracter's mistake was probably due to his failure to comprehend the descriptions of the area sold to the railroad company.

Appellant has demanded the return of the entire purchase money paid by him, and the sum expended in drilling the well. The lessors tendered the proportionate part of the purchase money covering the acre and a quarter to which the title had failed, and the decree of the court was for the return of that sum, and for that amount only, and this appeal is from that decree.

We are of the opinion that the decree of the court below is correct. There was no fraud practiced, and a case for rescission has not been made. The rule to be applied here is that announced in the case of *Fitzhugh* v. *Davis,* 46 Ark. 337, where the court said: "The rule is, to entitle a vendee of land, who has gone into possession under a deed with general covenants of warranty, to rescind on the ground of *failure of title,* the loss must be of such character as that he is thereby deprived substantially of the benefits of his purchase; but if the beneficial enjoyment of his contract be not materially taken away, and there is only a partial failure of consideration which can be compensated in damages, there is no case for rescission."

The thing really bought was the right to explore for oil, and the prospect of finding oil was the thing which gave the land its great value. It has now been determined that, because of the fault, the land is dry territory, just as is the land north, south and east of it, and for the same reason. This exploration was made by appellant himself, or for him, and on land to which the title failed.

If the well drilled was a producing, profitable well, we would have a question not presented by this record; but, as we understand this testimony, the entire lease is, practically speaking, dry territory, and appellant has had the benefit of his lease, which was the right to explore for oil. No oil was found in paying quantities, and the value of the portion to which the title failed is no greater than that of the remainder, and, in our opinion, the equities of the case are met by returning to appellant the proportionate part of the purchase money to cover the area to which the title failed. Such was the decree of the court below, and it is affirmed.