**ALLIANCE INS. CO. et al. v. ALPER-SALVAGE CO., Inc.**

Circuit Court of Appeals, Sixth Circuit. June 10, 1927.

No. 4794.

**1. Removal of causes ⊜➻116—Defendant may waive objection to jurisdiction of federal court in equity of removal suit.**

On removal of an equity suit of which the state court had undoubted jurisdiction, defendant may waive objection to jurisdiction in equity of federal court because of adequate remedy at law.

**2. Insurance ⊜➻595—Insurers, taking over damaged goods at appraised value, held, under terms of policies, not given extended time after notice to make payment.**

A clause of insurance policies giving insurers the right, on notice within 30 days, to take over damaged property at appraised value, does not give them 30 days, or the unexpired part of it, to make payment after notice is served.

**3. Insurance ⊜➻595—Adjuster's notice, after loss and placing of locks on store of insured, held specific notice that insurers would take over damaged goods at their appraised value.**

Adjuster's notice, after loss to insured, that under terms of policies companies would take over stock on basis of award made by appraisers, and placing of locks on store of insured, *held* specific notice to insured that

companies would take the goods at their appraised value.

**4. Insurance ☞595—Insurer's acts in placing locks on doors of insured's store after appraisal agreement held to result in practical eviction of insured, as regards recovery of damages.**

In suit by insured against insurance companies for damages claimed suffered through failure of representative of companies to carry out agreement to take over damaged goods at appraised value, act of companies in pursuance to agreement in placing locks on doors of store of insured *held* to result in a practical eviction of him for business purposes, as regards right to recover damages, notwithstanding that it originally thought it fair to attach the locks at a time when it was apparently justified in expecting immediate payment of appraised valuation.

**5. Insurance ☞558(6)—Insurers' notice, after appraisement, of election to take over damaged goods, held waiver of further proofs of loss.**

Notice by insurers, after appraisement, of election to take over damaged goods under policies, *held* waiver of further proofs of loss.

**6. Insurance ☞595—Insured held entitled to substantial damages for being kept out of its store building after loss, through default of insurers.**

Where insurance companies, after damage to a stock of goods and its appraisal, served notice of election to take over the stock at appraised value and locked the store, but delayed making settlement and removing the goods for some three weeks, insured, which had arranged to move in a new stock and continue business, *held* entitled to substantial damages for being excluded from its building for such time.

**7. Insurance ☞595—Acceptance of checks in payment of loss under fire policies held not waiver of claims for damages arising after the fire.**

Acceptance of checks from insurance companies after a loss reciting that they were in "full satisfaction, compromise and discharge of all claims for loss and damage by fire" to the property covered *held* not a waiver of claims for damages arising from failure of the companies to promptly pay for and remove goods which they elected to take over at appraised value.

**8. Interest ☞26—Claim for interest held waived by acceptance of principal without reservation.**

Acceptance without reservation of payment of the principal of a claim for damages *held* waiver of the right to subsequently sue for interest thereon.

Appeal from the District Court of the United States for the Eastern District of Tennessee; Xenophon Hicks, Judge.

Suit in equity by the Alper-Salvage Company, Incorporated, against the Alliance Insurance Company and others. Decree for complainant, and defendants appeal. Affirmed in part, and reversed in part.

J. B. Sizer, of Chattanooga, Tenn. (Sizer, Chambliss & Sizer, of Chattanooga, Tenn., on the brief), for appellants.

W. B. Swaney, of Chattanooga, Tenn. (J. M. Alper and Cooke, Swaney & Cooke, all of Chattanooga, Tenn., on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Appellee brought this suit in a Tennessee court against nine insurance companies to recover damages claimed to have been suffered through the failure and neglect of the representative of those companies seasonably to carry out the agreement hereinafter set forth.

Plaintiff's retail stock of goods, together with furniture and fixtures, in its store at Chattanooga, Tenn., was insured against loss and damage by fire by a series of nine standard form policies, severally issued by the respective defendants herein, and aggregating $16,500. On February 4, 1925, a fire in an adjoining building caused damage by water and smoke to plaintiff's stock and fixtures. On or about February 12, plaintiff and the insurance companies agreed in writing upon an appraisal. The appraisers, with the aid of an umpire, made an award on March 5th, fixing the sound value of the stock at $17,670.75, the loss thereon at $8,835.25, the total value of the furniture and fixtures at $1,879, and the loss thereon at $300, making a total loss of $9,135.37. On the next day, March 6th, the insurance companies, in writing, formally notified plaintiff that under the terms of the policies the companies interested would take over the stock on the basis of the award made by the appraisers, and enjoining plaintiff to hold the stock intact "until it can be checked out by you to the representative of the companies. * * * The representative for the companies will be on the ground to-morrow, at 10 a. m., prepared to have the stock checked out, and you are requested to have your representative at your place of business * * * at that time. Verbal notice has been served on the manager of the business, Mr. Dave Alper, and you, of course, will be held responsible for the merchandise as named in the inventory."[1]

---

[1] The representative of the insurers herein referred to was the adjuster of all the interested companies with one exception. That company later gave plaintiff another notice to the same purport. All the companies having thereafter acted in concert, the adjuster first referred to will, for convenience, be treated as the representative of the companies.

The next morning plaintiff's representative met the representative of the insurance companies at the store, and, through its attorney, demanded payment of the award, and declined to turn over the stock, except upon payment therefor, or upon receipt of drafts, upon the insurance companies, to be paid in the usual course of business, announcing itself prepared, however, to make such delivery immediately upon receipt either of such drafts or of the cash. The award was not then paid, nor drafts upon the insurance companies therefor given, nor was the stock removed by the insurance companies, until March 27th, 21 days after the companies had given notice that they would take over the stock on the basis of the appraisement referred to. Meanwhile the stock was kept locked up in the store, an additional lock being put by the insurance companies' representative thereon, each party having a key, and neither being able to enter without the presence of the other.

In this suit, brought to recover several thousand dollars damages for asserted delay in removing the stock and compliance with the accepted award, plaintiff was awarded $400.95, being interest, rental of store, and salary of plaintiff's manager, for the 21 days between the acceptance of the award and its payment and removal of the stock accordingly. The case is here on defendants' sole appeal.[2]

Upon the merits, we think plaintiff has suffered a substantial grievance. Before receipt of notice that the companies would take over the stock, plaintiff had arranged to have a fire sale in the store in question. The notice, of course, put an end to that. Plaintiff also intended to continue its business immediately in that store, and arranged to bring in a stock it had elsewhere. The companies' representative presumably so understood. (The plaintiff actually proceeded with its

business as soon as the companies took the stock away.) Plaintiff therefore could not afford to surrender its lease or break up its organization.

[1] The District Judge, before whom the testimony was taken in open court, says: "The weight of the proof is that the Alper Company was on March 7th ready to deliver the goods upon receipt of the price."[3] The judge also said: "The defendants kept the locks upon the doors, and likewise continued their refusal to pay, although payment was being continually demanded by the Alpers and their [attorney] until March 27, 1925." We are bound to accept these conclusions of fact, which not only are not against a preponderance of the evidence (Carey v. Donohue [C. C. A. 6] 209 F. 328, 331), but, in our opinion, clearly conform thereto. We also accept the conclusion of the District Judge stated in the margin.[4]

[2] We think the trial court rightly rejected the defendants' contention that they had 30 days after the receipt of the appraisal (or the unconsumed remainder of the 30-day period allowed for election) within which to take the goods. The clause relied upon by defendants as having such effect is printed in the margin.[5] But we think it clear that, while the companies had a specified 30 days within which to give notice of an intention to take the goods, it furnishes not even colorable basis for a contention that, after notice of the election, they had another 30 days in which to pay, or the unconsumed remainder of the 30 days allowed for making the election.

We see no merit in the suggestion that plaintiff has sustained no damage because of defendants' delay in carrying out their contract to take and pay for the goods, because

---

[2] The question of the jurisdiction of equity over the subject-matter of this suit suggests itself. The suit was begun in a state chancery court, which had undoubted jurisdiction, without regard to the existence or nonexistence of adequate remedy at law. On removal of the suit to the District Court below, defendants did not ask for its transfer to the law side, under general equity rule No. 22, but answered on the merits, have never raised the question of jurisdiction, and we understand do not desire to do so. Under the facts in this case, defendants could lawfully waive the objection that there was an adequate remedy at law, and we think have effectively done so. American Mills Co. v. American Surety Co., 260 U. S. 360, 363, 43 S. Ct. 149, 67 L. Ed. 306; Fay v. Hill (C. C. A. 8) 249 F. 415, 418. We therefore have no occasion to decide whether or not the remedy at law would have been adequate.

[3] It was undisputed that plaintiff did not insist upon cash payment, but offered to accept drafts on defendants payable in the regular course of business.

[4] "While the record discloses that there was some ill feeling, manifesting itself on more than one occasion in heated words, I do not regard the circumstances as indicating any willful or malicious purpose upon the part of the insurance companies or their agents to hinder or destroy plaintiff's business. The situation resulted, I think, from the election of defendants to take the goods without being at that time prepared to pay for the same, with the resultant delay in the forwarding of the checks from the different insurance companies scattered over the country."

[5] "It shall be optional, however, with this company, to take all or any part of the articles at such ascertained or appraised value, * * * on giving notice within 30 days after receipt of the proof herein required of its intention so to do."

of the fact that the same practical result would have followed if defendants had not elected until the end of 30 days. Defendants did elect on March 6th, and presumably because they thought it to their interest to do so.

[3, 4] We agree with the District Judge in the conclusion that the adjuster's notice of March 6th referred to, together with the placing of the locks upon the store, was a specific notice to plaintiff that the companies would take the goods at their appraised value, and that, upon this record, "when defendants put the two locks upon the doors, this resulted in a practical eviction of the plaintiff for business purposes"; and this, we think, is not made the less true or the less injurious from the fact that plaintiff originally thought it fair to attach the locks (although it was not consulted upon that subject) at a time when it seemed justified in expecting practically immediate payment of the appraised valuation.

We think the record would amply support a conclusion that any necessary checking of the stock, and its removal from plaintiff's store (thereby restoring the same to use during what the undisputed testimony shows was the busiest season of the year), could easily have been done in about one day.

[5] On this record, we regard as without merit the contention of defendants' representative that he was justified in requiring plaintiff to execute proofs of loss in the case of each insurer, to be forwarded to the respective insurers by mail (in spite of the fact that appraisement had already been made, and that the insurers had, by the action of their adjuster, which he had undisputed authority to make, accepted the appraisement and elected to take over the stock thereat, thus, we think, effectually waiving proofs of loss), and to await the separate action of each individual company after receiving the proofs of loss, in spite of plaintiff's offer to accept drafts on defendants to be paid in due course, and in the face of the fact that the adjuster's notice of March 6th, demanding that the stock be held intact, announced that defendant's representative would be on hand on the morning of the next day, prepared to have the stock checked out. We think the course taken by the adjuster reasonably explainable only as resulting from a mistaken view that the companies had still 30 days (or perhaps 28 days) in which to pay, not the amount of the loss, but the appraised value of the stock plus the loss on furniture and fixtures. Only so is it easy to understand the testimony of the adjuster's statement that he "didn't deem it necessary to wire," or the undisputed testi-

mony of his statement that he "wasn't in any hurry to settle."

[6] Upon the assumption that defendants' breach was, at the most, a mere failure to pay at the time it should have been paid money owing plaintiff, defendants contend that the full measure of plaintiff's damages is interest until payment made. With the element of defendants' continued deprivation of plaintiff's use of its property against its will eliminated, the correctness of defendants' contention might be conceded. With that element present, we think the contention erroneous. In addition to defendants' agreement to take and pay for the entire stock, plus the damage to furniture and fixtures, there was, in view of the situation so presented by the dealings of the parties and the notices and demands given by defendants, necessarily implied an agreement by defendants not needlessly to interfere directly with the use by plaintiff of its own store. The damage so caused is, to our minds, the direct, immediate, and necessary result of the unwarranted exclusion of plaintiff throughout the period in question. The situation is, we think, entirely different from an indirect injury to a creditor resulting from mere delay in complying with an agreement to pay money, either with or without delivery of property purchased. None of the cases cited by defendants relate to a situation where the damages awarded seem to have resulted naturally and proximately from a breach of an agreement such as that before us,[6] and such as might reasonably have been expected to result (in the event of the breach of defendants' agreement) at the time the adjuster's notice was given, when possession of the store was taken over by the adjuster, and during the period covered by the continual demands of plaintiff that the stock be checked out.[7]

[7] Defendants further contend that plaintiff waived all right to damages by its acceptance of checks given in payment of the award, all of which bear indorsement declar-

[6] Baumgarten v. Insurance Co. (C. C.) 159 F. 275; Loudon v. Taxing District, 104 U. S. 771, 26 L. Ed. 923; Insurance Co. v. Piaggio, 16 Wall. (83 U. S.) 378, 21 L. Ed. 358; Independent Co. v. Insurance Co., 146 Minn. 214, 178 N. W. 582; Green Briar District v. Clark (C. C. A. 7) 292 F. 828; Board v. Roach (C. C. A. 8) 174 F. 949.

[7] We find nothing to indicate that plaintiff was responsible for the delay in question. Among other things, it promptly complied with the adjuster's demand that provision be made for payment of merchandise creditors, to avoid possible liability under the Tennessee Bulk Sales Law. Acts Tenn. 1901, c. 133, as amended by Acts 1921, c. 84.

ing acceptance thereof in full satisfaction, compromise and discharge of all claims for loss and damage by fire occurring on February 4, 1925, to the property covered by the given policy. Such language does not indicate settlement for anything but fire loss and damage. It does not in terms purport to cover settlement for damages for breach of defendants' agreement seasonably to take and pay for the stock and damage to the fixtures, according to the appraisal and defendants' election and notice given thereunder, and then with due promptness to surrender possession of plaintiff's store. While the indorsements on some of the checks contain also language somewhat more general, none refer in terms to damage of the kind claimed here. It seems enough to say that the checks are for only the undisputed amounts of the liability of the several companies; that no attempt was made to adjust the damages here in question; that plaintiff, although using the checks, declined to accept the amount thereof in payment for or settlement of all the classes of damage here involved, and that the testimony leaves it fairly open to a conclusion that defendants had no reason to believe that plaintiff intended to waive the damages here claimed, but in fact understood a contrary intention on plaintiff's part; and that, regardless of all other questions, the alleged waiver was entirely without consideration, nor was it the result of an actual accord and satisfaction. Fire Insurance Ass'n v. Wickham, 141 U. S. 564, 12 S. Ct. 84, 35 L. Ed. 860; Tompkins v. Hill, 145 Mass. 379, 14 N. E. 177; Preston v. Grant, 34 Vt. 201.

[8] Defendants contend, however, that, as the principal of the indebtedness from defendants to plaintiff was paid before this action was brought, this suit could not be maintained for interest thereon. Such would be the effect if the principal was accepted without any reservation that such acceptance should not affect the question of the payment of interest, or the right to demand the same. Thomas v. C., N. O. & T. P. R. Co. (C. C.) 81 F. 917; N. Y. Trust Co. v. D. T. & I. Ry. Co. (C. C. A.) 251 F. 514, 519. In view of the fact that interest, if recovered, is by way of damages, we are disposed to think it was waived, in view of the fact that interest was not mentioned in the statements of damages presented at the time the checks were offered and received. As plaintiff's counsel says: "When we came to prepare the bill that [interest] naturally followed."

It follows, from the views we have expressed, that the award of damages made by the District Court should be affirmed to the extent of rental and salary in question, but reversed as to the interest.

We are not impressed by defendants' contention that the allowance should be but for 18 days, instead of 21 days, because of plaintiff's announced willingness to take drafts "payable in 2 or 3 days." The fact that plaintiff was willing to grant that much grace, in case of practically immediate payment, does not amount to a concession by it that such an extension was matter of right.

Appellants will recover one-third of their costs of this appeal. The award to plaintiff of its costs in the District Court will stand.