Submitted on briefs June 17, reversed July 22, rehearing denied October 14, second petition for rehearing denied October 21, 1924.

# C. G. PALMBERG v. CITY OF ASTORIA.

### (228 Pac. 107; 229 Pac. 380.)

**Municipal Corporations—City not Liable for Mistake in Approximate Estimates.**

1. Where it is understood by city and contractor that estimates are approximate only, city is not liable for mistake in estimates.

**Fraud—Elements to be Stated in Pleading.**

2. In pleading fraud, there must be rehearsal of representations claimed to be false and showing of materiality, and truth must be averred so that court may determine whether alleged fraudulent statement was false, and it must be alleged that party charged either knew statements were false or made them recklessly without any knowledge of whether they were true or not, all for purpose of perpetrating fraud, and that complaining party relied on representations.

**Fraud—Mistake not Actionable.**

3. Fraud cannot be predicated upon mere mistake, because to constitute fraud there must be an intent to deceive.

**Municipal Corporations—Contractor Held not Entitled to Damages for Error in Estimates.**

4. Contractor was not entitled to recover damages from city because of error in estimates on the theory of fraud, in the absence of a showing of intent to defraud and not mere mistake in calculation.

**Fraud—Reliance on Representations Essential.**

5. One cannot recover for fraud unless he shows that he relied upon the false representations complained of.

**Municipal Corporations—Contractor Doing More Than Contract Requires Acts at His Peril.**

6. If contractor agreed only to move certain amount of earth for city according to specifications, he was not obligated to move more, and in moving more he acted at his peril as regarded compensation.

**Municipal Corporations—City's Pleading in Contractor's Action Held Improperly Stricken.**

7. In action by contractor to recover damages from city because of error in estimates as to earth to be moved, court erred in striking

See 22 **C. J.**, p. 1098; 28 **Cyc.**, pp. 670, 1052, 1061; 31 **Cyc.**, p. 333. See 26 **C. J.**, §§ 44, 57; 27 **C. J.**, §§ 147, 148, 151, 153, 156; 28 **Cyc.**, p. 1061 (1926 Anno.); 31 **Cyc.**, pp. 60, 193, 699 (1926 Anno.).

1. Liability of municipal corporation to contractor for mistake in estimates prepared by former's officers or employees, see note in 16 **A. L. R.** 1131.

out defendant's statement of contract, plaintiff's failure to give notice of any mistake until after completion thereof, together with charter provisions affecting procedure in making such improvement.

**Pleading—Allegation Held Mere Conclusion of Law.**

8. *Allegation by city in answer that, "had not plaintiff made such representation, defendant would not have entered into such contract," was a conclusion ·of law at least, and not capable of proof or disproof.*

**Pleading—Denials may be General or Specific.**

9. Denials in an answer or reply may be either general or specific, under Section 73, Or. L.

**Pleading—Court Should have Excluded Evidence, Where Reply Failed to Traverse Material Allegations in Answer.**

10. Court should have sustained defendant's objection to introduction of testimony by plaintiff, where his reply failed to traverse material allegations in answer.

### ON PETITION FOR REHEARING.

**Pleading—Demurrer Admits Truth of Statements of Pleading.**

11. Demurrer admits truth of statements of pleading demurred to.

**Municipal Corporations—One Who Deals With City must Take Notice of Powers.**

12. One who deals with city must take notice of limitations on city's powers contained in its charter and ordinances.

**Evidence—Contractor's Oral Testimony not Admissible to Alter Effect of Written Representations That He had Made Full Local Examinations Before Submitting Bid.**

13. In contractor's action against city based on fraudulent misrepresentation as to quantity of excavation required, contractor could not, by oral testimony, controvert his written statement accompanying bid that he understood plans and specifications, had made examinations, and that bid was based thereon.

**Municipal Corporations—Contractor Making Independent Investigation cannot Recover Because City's Advertisement for Bids Misled Him as to Quantity of Excavation.**

14. Where specifications stated that quantities were approximate, and that no claim should be made on account of any excess or deficiency, and where examination of ground should have disclosed to contractor that city's advertisement was in error as to quantity of excavation required, he could not recover against city on theory that city fraudulently misled him as to yardage.

**Municipal Corporations—Contractor's Complaint for Extra Work Held Insufficient.**

15. Contractor's complaint against city for extra work, stating merely the sum expended was occasioned by city's false representations as to quantity of excavation, *held* insufficient for failure to allege reasonableness of amount expended.

From Clatsop: J. A. EAKIN, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the names of *Mr. Howard Zimmerman,* City Attorney, and *Messrs. G. C. & A. C. Fulton.*

For respondent there was a brief over the name of *Messrs. Norblad & Hesse.*

BURNETT, J.—As stated in *Palmberg* v. *Astoria,* 101 Or. 224 (199 Pac. 630, 16 A. L. R. 1125):

"This is an action to recover damages which the plaintiff claims to have sustained by reason of error committed by the defendant through mistake in materially understating in its specifications the amount of embankment required to complete an improvement upon a street of defendant city, by reason of which misrepresentation the plaintiff was induced to bid a lower sum for completing the improvement and to expend a greater sum of money therefor than would have been necessary had the conditions been as specified in defendant's advertisement for bids."

There, a demurrer was sustained to the complaint in the Circuit Court and the plaintiff appealed. The judgment of the Circuit Court was affirmed on the ground that the complaint did not allege that the specifications and profile described therein were all the data to which prospective bidders were referred and further, that the complaint was defective in that is merely stated that there was a mistake made by the surveyor and did not charge that the error was due to carelessness, negligence or incompetency of the agent of the city, who made it. On the authority of *Williams* v. *Pacific Surety Co.,* 66 Or. 151 (127 Pac. 145, 131 Pac. 1021, 132 Pac. 959, 133 Pac. 1186), the cause was remanded to the Circuit Court with per-

mission to the plaintiff to apply there for leave to amend his complaint. In pursuance of this commission, the plaintiff applied to and obtained from the Circuit Court permission to amend his initial pleading. In its changed form that document recites the municipal character of the defendant, the existence of Olney Avenue, and narrates the passage of a resolution for the improvement of that thoroughfare. It is then averred in substance that after the publication of its notice of intention to make the improvement, the city surveyor submitted plans including one profile, a copy of which was attached to and made part of a complaint, and specifications for the proposed street improvement which were filed with the auditor and police judge. Then follows this allegation:

"That said specifications, among other things, so far as relevant or material to the matters and things as hereinafter alleged, provided as follows:

"ITEMS OF WORK AND MATERIAL.

| Item No. | Total Quantities | Units | Unit Prices | Totals |
|---|---|---|---|---|
| Excavation | 9,650 cu. yds. | cu. yd. | | |
| Embankment | 17,087 cu. yds. | cu. yd. | | |
| 16 ft. planked roadway | 390 ft. | per ft. | | |
| 5 ft. wooden sidewalk | 820 ft. | per ft. | | |
| Repair of Macadam between 7th and 5th | | | | |
| Macadam, 6 in. thick by 20 ft. by 355=160 cu. yds. consolidated | | | | |

"Note: Embankment can be obtained from 10th Street and from 5th and 6th Streets. That the fore-

going figures and items constitute and are the only items or data contained in said specifications indicating the nature or amount of work to be performed.''

As imputing tort to the defendant, the allegation of the amended complaint reads thus:

''That said Alfred S. Tee, while so acting for and on behalf of defendant City, in his said capacity of its duly elected, qualified and acting City Engineer and City Surveyor, in preparing said plans and specifications for said proposed street improvement as aforesaid, carelessly, negligently, falsely, with utter and reckless disregard as to the truth, substantial accuracy or correctness thereof, and for the express purpose and design of having this plaintiff and all other prospective bidders for the work contemplated by said proposed street improvement rely thereon, drew and made said specifications to read and expressly represented therein that the amount of yards of dirt to be filled (or embankment, which means the same thing) amounted only to 17087 cubic yards. That said representation was utterly false, that said Alfred S. Tee well knew, or by the exercise of ordinary care and diligence could and should have known said representation to be false and substantially inaccurate and incorrect, and well knew, or by the exercise of ordinary care and diligence could and should have known, that in order to do the work as required by said contemplated street improvement and as called for in said plans, specifications and ordinance No. 5275 as heretofore alleged, and in the Notice of Receiving Bids as hereinafter alleged, it would take almost twice as many cubic yards of embankment as represented in said specifications and Notice of Receiving Bids, to wit: 28567 cubic yards.''

It is charged that the defendant, in representing that the amount of yards of dirt to be filled was only 17,087 cubic yards,

''did so carelessly, negligently, falsely, with utter and reckless disregard as to the truth, substantial ac-

curacy or correctness thereof, and for the express purpose and design of having this plaintiff, and all other prospective bidders for the work contemplated by said proposed street improvement, rely thereon; that said representation was utterly false; that defendant City well knew, or by the exercise of ordinary care and diligence could and should have known said representation to be false and substantially inaccurate and incorrect, and well knew, or by the exercise of ordinary care and diligence could and should have known that, in order to do the work as required by said contemplated street improvement, and as called for in said plans, specifications, ordinance No. 5275, and Notice of Receiving Bids, it would take almost twice as many cubic yards of embankment as represented in said specifications and Notice of Receiving Bids, to wit: 28567 cubic yards."

It is further said in substance, that relying upon the quoted tabulated items and without any knowledge of its falsity, inaccuracy and incorrectness the plaintiff submitted his bid, the items of which are in words and figures as set out in the table above quoted, with this added clause:

"All complete for the sum of $19,849.00. Will have the work completed the 1st day of July, 1919."

Then followed the history of other steps culminating in a contract between the plaintiff as party of the first part and the defendant as party of the second part which, after the formal recitation of parties, proceeds thus in respect to the work to be performed:

"That the party of the first part, for and in consideration therefor to be paid by the party of the second part, as hereinafter stated, does hereby covenant and agree to furnish all material and to perform all labor for the construction of the improvement of Olney Avenue from the west line of Fifth Street, to the east line of Tenth Street, except the crossing or intersection of Olney Avenue with Seventh Street, in the City of Astoria, Oregon, in accordance with a

resolution of the Common Council, adopted on the 17th day of June, 1918, and the plans and specifications made and filed by the City Surveyor therefor, the said resolution and said plans and specifications and said ordinance being hereby referred to and made a part hereof to the same effect and purpose as though set out *in haec verba* in this contract, said ordinance being approved on the 19th day of July, 1918, and said ordinance and said resolution and said plans and specifications are hereby referred to and made a part of this contract to the same effect and purpose as though the same were set out in full herein.

"That said improvement shall be constructed and completed to the satisfaction of the Committee on Streets and Public Ways, the Superintendent of Streets and City Surveyor, and that the said party of the first part shall commence work on or before ten days from the date of this contract, and diligently prosecute the work on said improvement, and that the same shall be completed on or before the 1st day of July, 1919, unless the time be extended by ordinance, and for each day's delay in the commencement of the work as above provided, and for each day's delay in the completion of the improvement as above provided unless the time be extended by ordinance, the party of the first part shall forfeit and pay to the City of Astoria as stipulated damages, the sum of $20.00.''

Other provisions respecting the payment for labor and the hours of employment and the like are omitted as not here involved. Averments about the giving of the bond are likewise omitted. These allegations also appear:

"That immediately thereafter, plaintiff commenced the work as called for by said written contract and plans and specifications, and thereafter continued to perform said work until about the middle of June, 1919, when he discovered for the first time that said Alfred S. Tee, while so acting for and on behalf of

defendant City, in his said capacity of its duly elected, qualified and acting City Engineer and City Surveyor, in preparing said plans and specifications, and that defendant City, in publishing and causing to be published said Notice of Receiving Bids for said proposed street improvement, had so carelessly, negligently, recklessly and falsely misrepresented the amount of yards of dirt to be filled (or embankment, which means the same thing) all as hereinbefore more fully alleged, and that in order to complete said contract according to plans, it would take almost twice as many yards of embankment as called for in said specifications, Notice of Receiving Bids, bid and contract, and that plaintiff thereupon immediately notified said Alfred S. Tee, in his said capacity of City Engineer and City Surveyor of defendant City, of said falsity and substantial inaccuracy and incorrectness of said specifications, and that thereupon said Alfred S. Tee, while acting for and on behalf of defendant City, ordered and directed plaintiff to complete his said contract according to plans and in accordance with stakes as set by him.

"That thereupon plaintiff, in order to complete his said contract with defendant city, according to plans and stakes as set by its said City Engineer and City Surveyor, and in order to avoid liability on his said bond, under protest moved and filled upon the direction and orders of said Alfred S. Tee, in his said capacity of City Engineer and City Surveyor of defendant City, an additional amount of dirt amounting to 11,480 yards over and above the estimated amounts to be moved and filled as shown by said specifications and Notice of Receiving Bids, and as required by his said written contract, and, in writing, notified defendant City that he would hold defendant City responsible in damages for the damages caused him by reason thereof."

It is alleged and admitted that the work as finally completed was approved and accepted by ordinance. The complaint concludes with this allegation:

"That after having so approved and accepted the street improvements heretobefore set forth, including the moving and filling of 11,480 yards of dirt in excess over and above the amount called for in said specifications, notice of receiving bids, and said written contract, defendant paid to plaintiff therefor the contract price thereof, to wit, the sum of $19,489.00, but no more. That the sum expended by plaintiff for such work and labor, so occasioned by defendant's said false representations and so performed by plaintiff for defendant City, at the order and direction of defendant's said City Engineer and City Surveyor, is the sum of $14,235.24 and that defendant City received the benefit thereof; that plaintiff demanded of and from defendant City, payment thereof and therefor, but that defendant City failed, neglected and refused, and still refuses to pay the same or any part thereof, all to plaintiff's great loss and damage in the sum of $14,235.24."

A general demurrer to the complaint was overruled. An answer was filed traversing all the allegations imputing fraud or wrongdoing to the city or its surveyor and in other respects.

For the first affirmative defense the defendant avers that prior to the institution of the action it paid to plaintiff and he received from it $19,849 in full payment and satisfaction for all work and labor performed and materials furnished for the completion of the contract averred. For a second affirmative defense it is stated in substance that immediately upon the declaration of the defendant's intention to make the improvement, the city surveyor caused the whole Olney Avenue included in the project to be surveyed and cross-sectioned, made accurate measurements of the cubic yards contained in the proposed improvements, both as to fills and cuts, and caused a complete and accurate profile map of such surveyed cross-sections and measurements

showing in detail thereon by lines and figures, all the data thus assembled and likewise caused to be prepared the plans and specifications mentioned in the complaint and in the contract and caused the same to be filed in the office of the auditor and police judge. That thereupon the plaintiff made his bid in writing to perform the work included in the plans and specifications which bid contained the stipulation following:

"The undersigned (meaning plaintiff) further affirms that he fully understands the plans and specifications, and has made full local examinations, and his bid is based upon this understanding."

It is said that all this was relied upon by the defendant and the contract entered into between the parties was based upon that stipulation. It is further averred:

"and had not plaintiff made such representation, defendant would not have entered into such contract."

The defendant sets out also the following excerpts from the specifications:

"This defendant further avers that the said specifications contained, among other provisions, the following:

"ERRORS AND OMISSIONS.

" 'The plans and specifications are to be interpreted as mutually supplementary and therefore any feature shown in one and not on the other shall have the same force and effect as if shown on both. Anything necessary to the proper completion of the work if not shown on plans or mentioned in the specifications shall be done by the contractor without claim for extra pay.

" 'Figured dimensions shall in all cases take preference over scale measurements. Full sized and large sized scaled drawings shall have preference over all other drawings. Should any discrepancy develop between the drawings it shall be the duty of

the contractor to call the engineer's attention to the same without delay.

## "'DECISION OF ENGINEER.

"'For details not sufficiently explained or understood the contractor shall refer to the Engineer who shall have the right to order any details to be provided without additional cost to the City, should it become evident that such details were originally intended or that they will be essential to the proper construction of the work.

## "'QUANTITIES.

"'The quantities given are approximate only, and no claim shall be made against the City on account of any excess or deficiency, absolute or relative in the same.'"

The defendant also charges that prior to the completion of the improvement by the plaintiff it had no notice of any mistake or error on the part of the city surveyor or otherwise in the computation or estimate of the quantity of yardage necessary to make the embankment for such improvement and that no notice thereof was given the defendant by plaintiff at any time until after he had fully completed the embankment. Continuing, the answer sets out certain provisions of the city's charter which were in force at all times mentioned in the complaint in substance as follows: Section 72 vested in the city council the power and authority to improve the streets of the city and, for the purpose of meeting expenses thereof, to divide the city into street improvement districts; that no part of the expense of such improvement shall be paid from the general fund but shall be defrayed by special assessments upon the realty included in the specified assessment district. Section 74 requires that before ordering any public improvement, any part of the expense of which is to be liquidated by district assessments, the council shall cause estimates

of the expense thereof and specifications for the work to be made and deposited with the auditor and police judge and at any time after the expiration of the period in which remonstrance may be filed and within ninety days thereof, and also after the estimates and specifications are deposited, the council may by ordinance order the improvement to be made and prescribe the time and manner of making the same. Finally, by Section 124 of the defendant's charter the city is not bound by any contract or in any way liable thereon unless it is authorized by city ordinance and made in writing and by order of the council, signed by the auditor and police judge or some other person duly authorized on behalf of the city. An exception is made in favor of an ordinance authorizing an officer or agent of the city to bind the city, without a written contract for the payment of any amount not exceeding $100. Based upon these allegations and protesting that by virtue of the premises the defendant was powerless to pay the plaintiff any sum of money whatever in excess of the contract price for the improvement and on account of the plaintiff's concealing from the defendant the error averred in the complaint until after he had completed the work, the defendant pleads that the plaintiff was estopped from demanding any further compensation from the defendant.

On motion of the plaintiff the trial court struck out of the defendant's answer various and sundry portions thereof but more particularly the part relating to the matters upon which the defendant predicates its plea of estoppel. Other portions were stricken out but the error predicated thereon is not of sufficient merit to be material in the view we take of the case.

In the reply the defendant denied some conjunctive allegations of the answer also in the conjunctive, particularly with reference to the allegation that the defendant had paid the plaintiff and the latter had received from the defendant the contract price ''in full payment and satisfaction for all the work and labor performed and materials furnished in and for the completion of said contract.''

A jury trial resulted in a verdict and judgment for the plaintiff and the defendant appealed.

Called upon to prove his allegations, the plaintiff introduced his original bid made on blanks furnished by the city, annexed to which were the plans and specifications upon which he proceeded. In addition to the excerpts already quoted there appears in the specifications the following clause:

''DECISION OF ENGINEER.

''For details not sufficiently explained or understood the contractor shall refer to the engineer who shall have the right to order any details to be provided without additional cost to the city should it become evident that such details were originally intended or that they will be essential to the proper construction of the work.''

It thus appears from the testimony introduced by the plaintiff himself that his allegation to the effect that the tabulation quoted was all the items or data contained in the specifications indicating the nature or amount of work to be performed is not proven. He counts upon the cubic yards in the embankment being 17,087 as absolutely true, whereas in his own bid, coupled as it was with the specifications to which he alluded, he said that the quantities given are approximate only and not only so, but further, ''that no claim shall be made against the city on account of any excess or deficiency, absolute or relative, in the

same.'' In other words, although he has attempted to amend his complaint so as to conform to the suggestions of our former opinion, his proof utterly contradicts his reformed averment.

1. In *City of Richmond* v. *Smith*, 119 Va. 198 (89 S. E. 123), it was held that the word ''approximate'' written on a profile of the river over which a bridge was to be built meant ''substantially accurate'' but in that case there was no stipulation as in the one at bar that ''No claim shall be made against the city on account of any excess or deficiency.'' In the annotations to the instant case in 16 A. L. R. 1125 it is said:

''Where, after it is expressly understood and agreed by the parties that the estimates are approximate only, the city will not be liable for any mistake in the estimates.''

The authorities there quoted justify the principles stated: *Molloy* v. *Village of Briarcliff Manor,* 145 App. Div. 483 (129 N. Y. Supp. 929); *Mairs* v. *Mayor of New York,* 52 App. Div. 343 (65 N. Y. Supp. 160), affirmed without opinion, 166 N. Y. 618 (59 N. E. 1126); *Leary* v. *City of Waterbliet,* 222 N. Y. 337 (118 N. E. 849).

As to the allegation of fraud, stated as it is, the plaintiff called as a witness the engineer referred to in the pleadings and he was asked to explain how it came about that the estimate was made out 17,087 cubic yards instead of the actual amount of embankment, and he testified thus:

''A. I will have to—the original improvement, the ground, we will say, ran down in an irregular way, and the original improvement, original resolution for the improvement was on a certain grade and that at the time, I think there was no particular action taken at the time, only a resolution, if I remember right,

but that grade was such a grade that it did not satisfy the Port of Astoria for the reason that they were contemplating building a belt line railroad which they did subsequently build as far as the McEachern Shipyard and they were going to cross this street and they would have had to cross it—it would not—did not fit their crossing—they would have had to have an overhead crossing and a big expense—they could not—didn't want it so they asked to have the grade changed, raised, and we raised—that grade was changed and a new resolution brought up by the Council on this new grade which was a grade suitable for that belt line railroad to cross over. The quantities were figured first on the original grade and then they were figured again to this new grade and the difference in the quantity occurred by the fact that the men, two men who figured at the cross-sections, figured at the quantity for the estimate for which this contract was undertaken—they figured just between those two grades or the grade line here and another grade line here and then this grade line above (indicating) on which the street was improved. Now, they figured between those two grade lines and it ought to have been figured below the others but in the tabulations, they only returned in their estimate between those two upper lines and left out that space, that area of fill between the ground and the first grade—understand—do you understand me? That was how, in my mind, that error took place. It was a matter of tabulation, not a matter of quantities—the quantities were practically rechecked by one of the men in the office, only this was omitted in the tabulation by some one.''

On recross-examination he testified that he did not personally recheck the work. His testimony continued thus:

''A. Well, at that time we were making a great many improvements and I was also acting as an engineer for the Sanitary and Reclamation work and we were just about letting the contract. I was getting

out all the specifications and plans for the Sanitary work and it was utterly impossible for me to do so.

"Q. Well, was there any other reason?

"A. I had no other reason only I was otherwise employed.

"Q. What I am talking about is—did you have confidence in your employees?

"A. Yes, sir.

"Q. And you had competent men to make this?

"A. I did. I had one of the most competent men I think ever was in Astoria.

"Q. You had confidence in him?

"A. I had absolute confidence.

"Q. What was this man's name?

"A. Alvin Johnson.

"Q. Where is he now?

"A. At the present time he is in—I think he is in China.

"Q. And you relied upon the accuracy and skill of this gentleman whom you say was a very skillful engineer?

"A. I think he absolutely is one.

"Q. Now, what do you mean by tabulations, you mean in adding up?

"A. Adding up—well, in adding up when—just adding up or tabulating—there is the two grades, between the upper grade and the lower grade on the ground.

"Q. Tabulating is putting your figures on paper?

"A. Putting the figures together, yes.

"Q. On your table, putting the figures?

"A. And giving the total quantity they omitted in their tabulations.

"Q. Omitted putting in the table certain quantities they had already figured but it was in adding up?

"A. It was a mistake in adding up."

Let us advert to the testimony of the plaintiff himself concerning the transaction. It is as follows:

"Q. Now then, how long did you continue the work before you discovered the mistakes in the amount of yardage in the embankment?

"A. First part of June, 1919.

"Q. How did you happen to discover it?

"A. Because I had finished all the yardage as the estimate called for, which was seventeen thousand—I should judge— * *

"Q. What did you do then?

"A. Notified the engineer of the City of Astoria. * *

"What happened then?

"A. I told him it was a great mistake. I told Mr. Tee there was a great mistake here on the fill of the embankment.

"Q. All right—you told him it was a mysterious mistake?

"A. Yes, sir.

"Q. What did he say?

"A. He didn't hardly answer me then—he went home and came back in a couple or three days, came back— * *

"A. In about two or three days afterwards, and set the stakes for the additional fill and he showed me the stakes that they must be filled up to that high—if not, I will not be paid a cent, then I told him I will hold the City responsible for all the additional dirt we filled in there from then on."

On cross-examination he testified thus:

"Q. Now what was it you say you said to Tee?

"A. Must be a great mistake here, I say."

2, 3. According to the rules of pleading fraud as established by the precedents in this state, there are four elements which must be stated; first a rehearsal of the representations claimed to be false and a showing of their materiality; second, the truth must be averred so that the court may determine whether the alleged fraudulent statement was false; third, it must be alleged that the party charged with the fraud either knew that the statements were false or, in lieu thereof, that he made them recklessly without any knowledge of whether they were true or not,

all for the purpose and intent of perpetrating a fraud; and lastly, that the complaining party relied upon such representation: *Rolfes* v. *Russel,* 5 Or. 400; *Dunning* v. *Cresson,* 6 Or. 241; *Martin* v. *Eagle Development Co.,* 41 Or. 448 (69 Pac. 216); *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215); *Bailey* v. *Frazier,* 62 Or. 142 (124 Pac. 643); *Riddle* v. *Isaacs,* 97 Or. 404 (192 Pac. 398); *Bank* v. *Duncan,* 105 Or. 105 (209 Pac. 149); *Carty* v. *McMenamin,* 108 Or. 489 (216 Pac. 228). Tested by this standard, fraud cannot be predicated upon a mere mistake. To constitute fraud there must be an intent to deceive and there is no intent in mistake. The distinguishing characteristic of mistake is want of intent. That the figures put in the table were the result of mistake in addition is clearly shown by the testimony of the engineer and the plaintiff himself characterizes the result as a mistake. It being well established by the precedents that the intent to deceive is a requisite element of fraud, it is not by the mark to plead as the plaintiff does here, that the defendant designed to have the plaintiff and all other bidders for the work rely upon the statement of the yardage required in the embankment. Of course, in all advertisements for bids and in specifications for such work, the manifest intent is to have bidders rely upon the statement. It is quite another thing that such statements were made with intent to deceive.

4. Moreover, as determined in *Wimer* v. *Smith,* 22 Or. 469 (30 Pac. 416), the doctrine according to the syllabus there is that "A party seeking relief on the ground of fraud perpetrated upon him by means of false representations, must not only clearly prove the fraud, but must also show that he relied upon the false representations; and although such false representations were made as alleged, yet, if, having full

means of knowing the truth, he acted on his own judgment in the transaction from which he seeks relief, he cannot complain." In the instant case, according to his own testimony, the plaintiff, in making his bid, stated "that he fully understands the plans and specifications and has made full local examinations and his bid is based upon this understanding." He also had the blue-prints of the work to be done showing cuts and fills and he testifies that he went on the ground and examined it for himself. True enough, he says in substance that he examined it for the purpose of determining the kind of earth to be excavated and the like but he had all the opportunity to examine the work that anyone could desire. His testimony discloses that he is a contractor of large experience in Astoria in the kind of work involved. The plans, specifications and cross-sectioning with detailed amounts of cuts and fills were on file with the City Surveyor open to inspection to anyone desiring to bid on the undertaking. Nothing was withheld from him. He was notified in advance that the quantities given are approximate only and that no claims should be made against the city on account of any excess or deficiency, absolute or relative, in the same. He made this statement part of his bid. Considering this action as one of tort resulting from an alleged fraud, the plaintiff has failed to establish fraud and has simply shown an innocent mistake at best.

*Spearin* v. *United States*, 51 Ct. of Cl. 155; Id., 248 U. S. 132 (63 L. Ed. 166, 39 Sup. Ct. Rep. 59), cited by the plaintiff, was a case where the government had let a contract for the construction of a drydock, including the change of a six-foot sewer which ran through the city so as to run around the location and

connect at another point with a seven-foot sewer. The contractor had made the change in the sewer according to the government plan and that branch of the work had been inspected and approved. Afterwards, owing to a dam in the larger sewer unknown to either party a very heavy rain coupled with an unusually high tide caused the new sewer to burst, whereby the excavation already made for the proposed dry-dock was flooded. The contractor at once suspended work and refused to proceed unless the government would restore the sewer and guarantee against further damage. After some negotiations, the government excluded the contractor from the work confiscating his tools and material, and completed the dock on a different plan and at larger expense. It was held that there was an implied warranty that the sewer so constructed would be adequate and that the refusal to make the warranty good was a breach of the contract for which the contractor was authorized to recover as damages, his proper expenditures already made less payments received, plus the profits that would have accrued to him on full performance of the work. The two cases are not parallel and no question of fraud was involved in Spearin's case.

Another of the plaintiff's citations is *Hollerbach* v. *United States,* 233 U. S. 165 (58 L. Ed. 898, 34 Sup. Ct. Rep. 553, see, also, Rose's U. S. Notes). In that instance the plaintiff sought to recover upon a contract made with the government for the repair of a dam in Green River, Kentucky. There the specifications provided:

"That the quantities given are approximate only and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same."

The specifications also stated that

"The dam is now backed for about 50 feet with broken stone, sawdust and sediment to a height of within two or three feet of the crest and it is expected that a cofferdam can be constructed with this stone after which it can be backed with sawdust or other material. The excavation behind the dam will be required to go to the bottom and it is thought that a slope of 1 horizontal to 1.2 vertical will give ample room."

It appeared that when the contractors proceeded with the work of removing the material behind the dam, it was found that the dam was not backed with broken stone, sawdust and sediment but that the backing was composed of a soft, slushy sediment in part, and below that to the bottom of the required excavation was cribwork consisting of sound logs filled with stone to an average height of 4.3 feet, and it was shown that to remove the cribwork as thus situated was far more difficult and expensive than to take out the broken stone, sawdust and sediment mentioned and represented in the specification. Here, it will be observed, are two elements considered by the court; one, that the fact that the quantities given are approximate, and the other the absolute, unqualified statement that the material to be excavated was broken stone, sawdust and sediment. Concerning these two elements, the court said:

"The term 'quantities' as used in paragraph 20, may doubtless refer to estimates of the amount of different kinds of work which are specified in the contract. We do not see how it could control the statement of paragraph 35 definitely made as to the character of the material back of the dam."

In other words, the court clearly distinguishes between the tentative statement of the amount of work to be done and the positive statement, on the other

hand, of the kind of material to be excavated. The Hollerbach case is not in any sense controlling in the present contention.

*Christie* v. *United States,* 237 U. S. 234 (59 L. Ed. 933, 35 Sup. Ct. Rep. 565, see, also, Rose's U. S. Notes), involved the rights of the contractor for compensation for work done under a government contract for the construction of locks and dams on a river in Alabama. The representation contained in the specification and the drawings to which they referred was positive that the material to be excavated consisted of "gravel, sand and clay of various descriptions," whereas in truth it was composed "largely of stumps below the surface of the earth, buried logs, of cemented sand, and gravel, and of sandstone conglomerate," all more difficult to excavate than that represented by the specifications. On account of this direct and positive statement without qualification concerning the material to be excavated which, it transpired, was false, the court allowed damages. In the same case, however, the same court refused to allow a claim of $45,000 for excavation of material caused by defect in the "angle of repose" of the embankment. On that point the specification was that "the limits of the excavation and quantities to be excavated will depend on the ascertained angles of repose. The limits shown on the drawings and the amounts herein given are approximate and may be greater or less as the local conditions may demand or justify." These cases, some of which are cited by the plaintiff here, do not depend upon the question of fraud. The precept laid down there is that a positive, direct statement of fact must be treated as made and is in the nature of a warranty which must be strictly adhered to but where an approximation is given and it is so stated, the party

accepting such a statement must take it at its own value and cannot rely upon it as if it were made positively. So, in this case, when the plaintiff was warned in advance that the quantities were approximate only and that no additional compensation would be allowed on actual quantities employed, he made his bid with his eyes open and at his own risk and the city cannot be held liable under such circumstances.

At best, the plaintiff presents only a case where there has been a question about the construction of the plans and specifications which he has referred to the engineer. Among the specifications already quoted under such circumstances as this, that officer has "the right to order any details without additional cost to the city, should it become evident that such details were originally intended or that they were essential to the proper construction of the work." Furthermore, the specifications made part of the contract and introduced in evidence by the plaintiff prescribe that "anything necessary to the proper completion of the work, if not shown on the plans or mentioned in the specifications, shall be done by the contractor without claim for extra pay." The plaintiff was notified by the plans and specifications of what was required and he contracted with reference to them. He and the engineer differed in their constructions of those plans and specifications and, without any appeal to the council in whom is lodged the exclusive power of contracting under charter restrictions, he yielded to the engineer who had no authority to bind the city, and adopted that officer's construction of the specifications.

5. If the plaintiff only contracted to move 17,087 cubic yards of earth, he was not obligated to move more. This must be true if his deduction that the

table in the call of the city for bids is conclusive.
Having completed his contract on that basis, the
plaintiff had no right to go on and compel the city
to incur further liability in any other manner than
as prescribed by the charter, viz., by ordinance after
advertising for bids. In making additional fill he
acted at his peril.

On the other hand, his bid was offered on those
same plans and specifications and on them as part
thereof the contract was made. If such data being
the same throughout the transaction required 28,567
yards of embankment, they required it at all times
without variation so that the plaintiff was bound to
perform accordingly. In other words, if the table
showing 17,087 cubic yards of fill was conclusive, he
complied with his contract when he put in that
amount of earth and was not entitled to go further.
But if the whole document construed together re-
quired 28,567 cubic yards, he was bound to perform it
without further compensation.

6. The court was in error in striking out the de-
fendant's statement of the contract, the plaintiff's
failure to give notice of any mistake or error in the
contract until after completion thereof, together with
the charter provisions affecting the procedure in
making such an improvement. The plaintiff was con-
tracting with a municipality, an artificial person. It
was competent for that defendant to set up limita-
tions upon its powers differentiating it from a natural
person and to show that the plaintiff had not pro-
ceeded according to the rules laid down in the charter
which is the rule of action prescribed by the people
for that municipality. The pleadings on both sides
are plethoric with statements of evidence and might
well have been made more concise.

7. It is clearly a conclusion of law at least, and not capable of proof or disproof, to say as the defendant did in its answer that "had not plaintiff made such representation defendant would not have entered into such contract." *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68).

8, 9. As to denials in an answer or reply, the pleader may employ either the general or the specific form: Or. L., § 73. *Moser* v. *Jenkins,* 5 Or. 447, was decided while yet the statute required specific denials of all controverted matter. Afterwards the section was amended so as to allow either a general or a specific denial. Concerning the latter method, Mr. Justice McArthur in *Moser* v. *Jenkins* wrote thus:

"It will be observed that the first and second denials are in the conjunctive form and are also what is known as literal denials. They are insufficient to raise any issues, and are virtual admissions of the truth of the allegations they were intended to deny."

This rule has been followed ever since then in this state: *McCormick Machine Co.* v. *Hovey,* 36 Or. 259 (59 Pac. 189); *Whitney Co.* v. *Smith,* 63 Or. 187 (126 Pac. 1000); *Minter* v. *Minter,* 80 Or. 369 (157 Pac. 157); *White* v. *East Side Mill Co.,* 81 Or. 107 (155 Pac. 364, 158 Pac. 173, 527); *McIntosh Live Stock Co.* v. *Buffington,* 108 Or. 358 (217 Pac. 635).

10. As measured by the rule so long established by these precedents, the plaintiff in his reply failed to traverse material allegations in the defendant's answer. The trial court ought to have sustained the defendant's objection to the introduction of testimony by the plaintiff while his reply was in that condition. The amended reply is subject to the same criticism. The vice of such pleading was a sufficient ground for a judgment of nonsuit. The reason of the rule about

conjunctive denials is clearly pointed out by Mr. Justice McBRIDE in *White* v. *East Side Mill Co.*

Summing up: 1. The plaintiff failed to prove the allegation of his complaint to the effect that the table of quantities quoted therein was the entire and exclusive specification on that subject. On the contrary, he established beyond controversy that it was distinctly specified that the quantities given were proximate and not only so, but also that no claim should be made against the city on account of any excess or deficiency. 2. Instead of proving fraud as he attempted to aver, he only shows a clerical mistake in adding together the quantities in the several cross-sections. This was a failure of proof because a necessary element in fraud is an intent to deceive and there is an absence of any intent in mistake. 3. There was no concealment practiced by the city; the plaintiff did not rely on the representations of the city, whatever they were, but made independent investigation with full opportunity to ascertain the actual conditions. 4. His reply fails to traverse material and controlling averments of the answer. 5. The case presented by his evidence is one where he did not concur with the engineer in the construction of the contract, the terms of which made the latter's determination controlling without additional expense to the city.

The Circuit Court erred. The judgment is reversed, with directions to enter a judgment of involuntary nonsuit.        REVERSED WITH DIRECTIONS.

McBRIDE, C. J., and BEAN, J., dissent.

Rehearing denied October 14, 1924.

ON PETITION FOR REHEARING.

(229 Pac. 380.)

*Messrs. Norblad & Hesse,* for the motion.

*Mr. Howard Zimmerman* and *Messrs. G. C. & A. C. Fulton, contra.*

BURNETT, J.—11. A very earnest petition for rehearing has arrayed the latest opinion of this court directing a judgment of nonsuit against the former opinion approving the action of the Circuit Court in sustaining a demurrer to the original complaint. The effort of the petition for rehearing seems to be to establish that between the two opinions there is irreconcilable conflict. It is enough to say on this point that the first opinion was upon demurrer to the complaint, which, admitting all the statements . of that pleading to be true, yet hold they did not state facts sufficient to constitute a cause of action, while in the present condition of the case the pivotal question is whether the plaintiff has succeeded in proving his charges of fraud. In the first opinion the question was one of pleading. In the second it relates to the sufficiency of the evidence.

12. It is freely admitted as a principle that the charter and ordinances of the city did not give it license to defraud anyone, but it is equally true that a municipal corporation has its rules of existence and its limitations upon powers prescribed in those public enactments of which anyone dealing with it must take notice and be governed accordingly.

As extracted from the amended complaint, the charge in substance is that the city caused plans,

specifications and estimates to be prepared for the improvement of a street and advertised for bids thereon. In the advertisement was a table entitled "items of work and materials," in which it was recited that the total quantity of embankment was 17,087 cubic yards. The plaintiff avers that this table contained the only data in the specifications indicating the quantity or amount of work to be performed; that the plaintiff made his bid on that basis; that the statement contained in the table was recklessly made without knowledge of whether it was true or not, whereby the plaintiff relying upon the same was fraudulently induced to make his bid on that understanding; and that after entering upon the performance of work, his bid having been accepted, he discovered the error and found that the contract required almost twice as much embankment as the figures in the table indicated.

His allegations of fraud were controverted and the question at present to be determined is whether he succeeded in maintaining the issue on his part. His counsel persists in the contention that in the latest opinion the matter had been treated as an action upon the contract. This supposition, however, is erroneous. The plans and specifications made part of the contract were not considered as if the action was upon the contract.. They were referred to in the opinion as containing the representations of the city as to what was required. They pointed out the rules by which they were to be interpreted. For instance, it was said that:

"The plans and specifications are to be interpreted as mutually supplementary and therefore any feature shown in one and not on the other shall have the same force and effect as if shown on both."

The result of such a situation was to warn the plaintiff when he was referred to the plans and specifications that the figures in the table were not controlling, that all of the specifications must be read and considered together so that if in another part thereof, outside of the table, there were data independent of the table showing that the embankment should be 28,567 yards, he was bound by that part of the specifications to perform them, notwithstanding the lesser amount indicated in the table. That he was warned in advance that the quantity of embankment figures at 17,087 yards was not conclusive is supported by the fact that in the specifications upon which he made his bid, it is said:

"The quantities given are approximate only, and no claim shall be made against the City on account of any excess or deficiency, absolute or relative in the same."

Thus warned of what was required, the defendant made his bid in writing in which he said:

"The undersigned further affirms that he fully understands the plans and specifications, and has made full local examinations, and his bid is based upon this understanding."

We learn from the complaint that after having entered upon the performance of the contract, the plaintiff discovered that it would take in round numbers, 28,000 cubic yards of earth to complete the embankment required by the contract. In other words, 28,000 cubic yards was in truth included in the specifications which the contract undertook to fulfill. There is no pretense anywhere, either in the pleadings or the testimony, that the plans or specifications were in any way altered or changed, nor that any representation was made by the city except those

contained therein. They remained the same throughout the whole transaction, to the completion of the work. A dilemma, therefore, confronts the plaintiff: If, on the one hand, the representation of 17,000 yards contained in the table is of controlling potency, it was the limit of his contract, and he was not compelled nor authorized to go further with the embankment than that amount. He had no right, except by pursuing the formula prescribed by the charter and ordinances of the city, to saddle further liability upon the municipality by going on and doing work not within the contract. On the other hand, if by the other parts of the plans and specifications, 28,000 cubic yards were required, they were required quite as effectively and manifestly before he ever made an offer to perform the work, as afterwards, for the advertisement quoted in his pleadings advised him specifically that the work was to be done according to the plans and specifications on file with the designated official of the city. More than that, in making his bid, he reported to the city that he had made full local examinations, with full understanding of the plans and specifications, and on that basis had made his offer.

Let us advert once more to the rule respecting a plea and proof of fraud, quoting Mr. Justice BEAN, in *Wheelwright* v. *Vanderbilt*, 69 Or. 326, 328 (138 Pac. 857, 858):

"To constitute actionable fraud it must appear (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered in-

jury.  Each of these facts must be proved with
reasonable certainty, and all of them must be found
to exist.   The absence of any one of them is fatal to
recovery.''

13. All the data upon which the improvement was
projected were on file and referred to in the adver-
tisement for bids.   The specifications likewise were
on file and so mentioned.   Warned by them that the
quantities given were approximate only, and no claim
should be made against the city on account of any
excess or deficiency, absolute or relative, the plain-
tiff, according to the testimony introduced by himself,
made full local examinations and based his bid upon
a full understanding of the plans and specifications,
and those examinations.   True enough, in his testi-
mony given orally at the trial, he says in substance
that his actual examination was only a casual in-
spection of the earth to be excavated.   Plaintiff, how-
ever, cannot thus alter the effect of his written repre-
sentations made to the city in connection with his
bid.   He does not pretend that anyone did anything
to prevent him from making such examination and
study of the plans and specifications as he represented
in writing he had done.

Bearing in mind the rule that all these elements of
fraud must be proved, without exception, we will
examine some precedents relating to the element that
the plaintiff acted in reliance upon the alleged fraudu-
lent representations. *Farnsworth* v. *Duffner,* 142
U. S. 45 (35 L. Ed. 931, 12 Sup. Ct. Rep. 164, see,
also, Rose's U. S. Notes), was a suit for the rescission
of a contract of purchase, and to recover the moneys
paid thereon on the ground that it was induced by the
false and fraudulent representations of the vendors.
The court, speaking by Mr. Justice BREWER, said:

"In respect to such an action it has been laid down by many authorities that, where the means of knowledge respecting the matters falsely represented are equally open to purchaser and vendor, the former is charged with knowledge of all that by the use of such means he could have ascertained. In *Slaughters' Administrator* v. *Garson*, 13 Wall. (U. S.) 379, 383 (20 L. Ed. 627, see, also, Rose's U. S. Notes), this court said: 'Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, ·where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained.' * * In *Ludington* v. *Renick*, 7 W. Va. 273, it was held that 'a party seeking the rescission of a contract, on the ground of misrepresentations, must establish the same by clear and irrefragable evidence; and if it appears that he has resorted to the proper means of verification, so as to show that he in fact relied upon his own inquiries, or if the means of investigation and verifications were at hand, and his attention drawn to them, relief will be denied.' In the case of *Attwood* v. *Small*, decided by the House of Lords, and reported in 6 Cl. & F. 232, 233, it is held that 'if a purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or to his agents, he cannot be heard to say he was deceived by the vendor's representations.' And in 2 Pomeroy's Equity Jurisprudence, Section 892, it is declared that a party is not justified in relying upon representations made

to him—'1. When, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement. 2. When, having the opportunity of making such examination, he is charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence. 3. When the representation is concerning generalities equally within the knowledge or the means of requiring knowledge possessed by both parties.'

"But if the neglect to make reasonable examinations would preclude a party from rescinding a contract on the ground of false and fraudulent representations, *a fortiori* is he precluded when it appears that he did make such examination, and relied on the evidences furnished by such examination, and not upon the representations."

Again, in *Southern Development Co.* v. *Silva,* 125 U. S. 247, 259 (31 L. Ed. 678, 8 Sup. Ct. Rep. 881, 887, see, also, Rose's U. S. Notes), in speaking of this feature of fraud, namely, that the plaintiff relied upon the alleged representations, Mr. Justice LAMAR said:

"It is essential that the defendant's representations should have been acted on by complainant, to his injury. Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations."

The same doctrine is advanced by Mr. Justice BEAN of this court, in *Reimers* v. *Brennan,* 84 Or. 53, 59 (164 Pac. 552, 554), in this language:

"A purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller, and between parties dealing at arm's-length, where no fiduciary relation exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser

112 Or.—25

must make use of his means of knowledge, and failing to do so he cannot recover on the ground that he was misled by the seller: 30 Cyc. 49; *Allen* v. *McNeelan*, 79 Or. 606 (156 Pac. 274); *Poland* v. *Brownell*, 131 Mass. 138 (41 Am. Rep. 215.) Where there has been an inspection by a person making an exchange of property, false representations as to the value cannot as a rule be made the basis of an action for damages.''

14. Suppose for illustration that the city had definitely made the figures of embankment at 17,000 cubic yards with the intention to cheat and defraud any bidders. Yet, it is plain from the authorities cited that if one proposing to enter into a contract to do the work had inspected the ground and perused the plans and specifications giving the actual data upon which the yardage was computed, he could not recover for the fraud. Yet that is the situation presented by the plaintiff's own testimony. He was pointed to the plans and specifications. He was warned by those very specifications that the plans and specifications were to be so interpreted that any feature shown in one and not in the other should have the same effect as if shown in both. He was plainly told that the quantities given were approximate only, and no allowance would be made for any increase. On his part he represented to the city that he had made examination of all these things and thoroughly understood them. Even if the city had made the representation with design to perpetrate a fraud on bidders, he represented himself to be a person upon whom such a fraud could have no effect and advised the city, in effect, that he had not relied upon any representations. By his own testimony he has failed to prove one of the essential elements laid down in *Wheelwright* v. *Vanderbilt, supra,* viz., that he relied

upon the alleged fraudulent statement. As there stated: "The absence of any one of them is fatal to recovery." He has shown that he did not rely upon the representation of 17,000 yards.

It is true that in the former opinion, Mr. Chief Justice McBRIDE said that it was not "incumbent upon the contractor to make new surveys or calculations from an independent profile, if this profile and the accompanying specifications were all that were on file, in order to verify the city surveyor's calculations." But he did not say that the plaintiff was justified in shutting his eyes to every other provision of the plans and specifications. They all were open for his inspection. His attention was directed to them. Throughout the period of advertisement there was opportunity for him to examine and become familiar with them. According to his own written declaration, he did so. Not the least effort was made to prevent him. Dealing, as he was, at arm's-length with the city, it was his duty to take care of his own interest. Civil engineering is not an occult craft, neither is computation of fills and excavations among the hidden mysteries of modern industry. With all the data before him that the city employed and having made himself familiar with them, he cannot complain if his contract proves to be unprofitable.

The testimony shows clearly that the approximate figures of 17,000 yards was the result of merely a mistake in addition. It is so characterized by the plaintiff himself and explained by the engineer for whose veracity the plaintiff vouched by calling him as a witness. On this point we refer to *Whalen* v. *Tipton*, 31 Or. 566 (50 Pac. 1016), which was a suit to cancel a deed conveying to the defendants a tract

of land in exchange for another parcel on the ground that the plaintiffs were induced to make the exchange by the fraudulent representations of the defendants as to the amount then due on the mortgage on the latter tract. The data upon which the amount could be computed were open to the inspection of the plaintiffs. They had the same means of ascertaining the true amount due that the defendant had. However, the court said:

"But this is not enough to constitute fraud. It is a necessary ingredient of fraud, even in equity, that the act or omission by which the undue advantage is obtained should be willful and intentional. A mere mistake is not sufficient. 2 Pomeroy's Equity Jurisprudence, § 873. Now, there is no evidence whatever to show that defendant's statement as to the amount due on the mortgage was willfully or designedly made, or that it was not made in the utmost good faith, and with an honest belief that it was true."

See, also, *Banfield* v. *Banfield,* 24 Or. 571 (34 Pac. 659), where the dispute was about the amount due upon a bond, the factors for calculating which were in reach of the plaintiff as well as the defendant and as a consequence the court held the plaintiff was not entitled to relief on the ground of fraud. *McGovern* v. *McClintic-Marshall Co.,* 269 Fed. 911, was a case where the dispute was about the estimate of quantities of steel required in the construction of an elevated railway. After an exhaustive consideration of the case the court said:

"After entering into a solemn contract assuming obligations, where opportunity was afforded the defendants below to avail themselves of estimating to determine the tonnage required, which was equal to that of the plaintiff below and as available to them, they should not now be relieved of their obligations

in a court of equity because of their inattention or carelessness.''

The following cases cited in the petition for rehearing have had our consideration: *Wyandotte & D. R. Ry. Co.* v. *King Bridge Co.,* 100 Fed. 197 (40 C. C. A. 325), wherein no fraud was involved. The work for which compensation was claimed was outside the contract. The same is true of *County of Cook* v. *Harms,* 108 Ill. 157. This was an action to recover the extra cost of construction of a courthouse where the original plans had been abandoned and new plans and specifications installed, involving a very much larger cost for work not at all included in the original contract. *Salt Lake City* v. *Smith,* 104 Fed. 457 (43 C. C. A. 637), was an instance where a change was made in the line of a conduit whereby, instead of running through comparatively level country, the last mile was made to traverse hills, rocks and gulches: *Plum Bayou Levee Dist.* v. *Roach,* 174 Fed. 949 (99 C. C. A. 453), involved the extra cost of construction of a levee on the Arkansas River. The original plans called for construction on the dry ground along the bank of the river, but by a subsequent change the line was made to run one-half mile back from the river and through a swamp, being a substantial alteration and being a new contract. All these cases were based upon contract and not upon tort.

In the instant case, as stated, there is no pretense that there was any change in the plans or specifications from the time the transaction was initiated until the time it was concluded. The only question is: What did the plans and specifications require? If they required only 17,000 yards of embankment that was what the plaintiff was entitled to perform

and no more. If, on the other hand, they required 28,000 yards, he was required to perform that in accordance with the contract and bid made in pursuance thereof. The following cases are instructive on the question that there is no actionable fraud where one claiming the fraud made an independent investigation or where he had the same means of knowledge possessed by the other party to the contract: *Hagee* v. *Grossman,* 31 Ind. 223; *Hess* v. *Young,* 59 Ind. 379; *Tuck* v. *Downing,* 76 Ill. 71; *Schwabacker* v. *Riddle,* 99 Ill. 343; *Insurance Co.* v. *Reed,* 33 Ohio St. 283; *Brown* v. *Leach,* 107 Mass. 364; *Poland* v. *Brownell,* 131 Mass. 138 (41 Am. Rep. 215); *Long* v. *Warren,* 68 N. Y. 426; *Chrysler* v. *Canaday,* 90 N. Y. 272 (43 Am. Rep. 166); *Mamlock* v. *Fairbanks,* 46 Wis. 415 (1 N. W. 167, 32 Am. Rep. 716); *Farrar* v. *Churchill,* 135 U. S. 609 (34 L. Ed. 246, 10 Sup. Ct. Rep. 771, see, also, Rose's U. S. Notes).

15. The concluding allegation of the complaint, is:

"That the sum expended by plaintiff for such work and labor, so occasioned by defendant's said false representations and so performed by plaintiff for defendant City, at the order and direction of defendant's said City Engineer and City Surveyor, is the sum of $14,235.24."

There is no averment that this was a reasonable sum to be expended for the so-called extra work. If a recovery can be had upon such an allegation, all that would be necessary for a contractor to do when he has made an improvident agreement is to seize upon some innocent mistake, pad his pay-roll and demand that the city reimburse him at his own figures. In no event could the contractor recover more than the reasonable value of the alleged extra work, and if he would recover, even on a charge of

fraud, he must allege what is reasonable. No such issue is presented in the pleadings here.

The essence of the case is that having made an independent investigation of the plans, specifications and work to be done, or at least having reported that condition to the defendant in writing, and having ample opportunity to inform himself of the true amount of embankment, the plaintiff has failed to prove the indispensable essential that he relied on the representations of the defendant. Under the doctrine in *Wheelwright* v. *Vanderbilt, supra,* this is fatal to plaintiff's recovery.

The petition for rehearing is denied.

REHEARING DENIED. SECOND PETITION FOR REHEARING DENIED.